**CEDERBLADE et al. v. PARMELEE TRANSP. CO.**

No. 46 C 55.

United States District Court
N.D. Illinois, E.D.

July 23, 1947.

966

Frank P. Kronenberg, Chicago, Ill., for plaintiff.

Ringer, Reinwald & Sostrin, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is an action for unpaid overtime compensation and liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., brought by a number of plaintiffs who were employed by the defendant as chauffeurs and custodians in the operation of the automobile trucks and coaches used in the defendant's transportation business. The defendant pleaded certain legal defenses in its answer, which are now before the court on briefs filed by the parties pursuant to an order entered on

January 21, 1947. The defendant has argued the second defense, relating to the alleged intrastate aspects of certain of its operations, and the ninth, tenth, and eleventh defenses, relating respectively to the motor carrier exemption, the rail carrier exemption, and the service establishment exemption of the Fair Labor Standards Act with respect to the operations which are conceded or determined to be in Interstate Commerce.

█ In their answering brief the plaintiffs assert that the second defense is not a legal defense, that its determination requires the taking of evidence concerning the defendant's operations, and that statements by defendant's counsel in briefs cannot be substituted for evidence; and they accordingly move that all argument in support of the second defense and the unsupported statements of fact appearing in the defendant's brief be stricken. In view of the decision of the United States Supreme Court in United States v. Yellow Cab Company, 332 U.S. 218, 67 S.Ct. 1560, 1567, 91 L.Ed. 2010, I think it is unnecessary to reserve ruling on the question of interstate commerce for the trial.

### The Second Defense

The defendant states that its operations are of three types. First, the operation of buses between downtown Chicago and the Chicago Municipal Airport, transporting passengers and baggage in both directions. The passengers pay the defendant direct for this service. These airport buses are used by the defendant solely for this purpose. Second, the operation of trucks for the transportation of trunks and other baggage between residences, hotels, railroad stations, and bus terminals in Chicago and its Illinois suburbs. This service is paid for direct to the defendant by the owner of the baggage. Third, the operation of a transportation service between railroad depots or between railroad and boat depots in Chicago, carrying passengers and their baggage from one carrier to another in Chicago. This service is paid for by the carrier which receives the passenger for further transportation and is represented by a Parmelee transfer coupon issued with the through railroad ticket to the passenger. The defendant is paid by the carrier for this service upon presentation of this coupon.

The defendant concedes for the purpose of this motion that those plaintiffs who are engaged in inter-station transfer operations are engaged in interstate commerce, but argues that those engaged in operating airport buses and in general baggage transfer are engaged in intrastate commerce because such operations are begun and completed prior or subsequent to the movement of persons and baggage in interstate commerce. It contends that the latter operations are purely a local matter and are not an integral part of the movement of persons and baggage in interstate commerce. In this connection the defendant stresses the fact that in the latter operations the contract is between the defendant and the person being transported and shipping the baggage, and not, as in the interstation transfer operations, between the defendant and an interstate carrier.

In the recent anti-trust action against the Yellow Cab Company and others, including the defendant herein, the Supreme Court had occasion to pass upon the types of transportation service involved in the instant case. In this connection, the Court said: " * * * what may fairly be said to be the limits of an interstate shipment of goods and chattels may not necessarily be the commonly accepted limits of an individual's interstate journey." Hence it is unnecessary, for the purposes of this case, to analyze the great number of cases arising under the Fair Labor Standards Act which involve the shipment of goods in interstate commerce.

With respect to the movement of passengers and their luggage by means of transportation services of the type furnished by the defendant herein, the Supreme Court declared:

(1) The transportation, pursuant to Parmelee's exclusive contracts with railroads and railroad terminal associations, of passengers and their luggage, moving in an interstate journey, between stations in Chicago "is clearly a part of the stream of

968

interstate commerce." The defendant herein has conceded this point.

(2) The transportation between railroad stations and residences and hotels prior or subsequent to the interstate railroad journey "is not a constituent part of the interstate movement."

A slight difference in facts exists at this point between the instant case and the Yellow Cab case. The Supreme Court in the latter case was considering the transportation of passengers and their baggage, and said that the commonly accepted limits of the interstate movement of an individual may not necessarily be the same as the limits of an interstate shipment of goods and chattels. In the instant case, the defendant's transportation service between railroad stations and bus terminals, and residences and hotels does not involve the movement of passengers, but pertains only to trunks and other baggage. I do not think that the absence of passenger service by the defendant in this category of its operations should place its general baggage transfer under the rules which mark the limits of the interstate movement of goods and chattels. Whether baggage is moving in intrastate or interstate commerce should be determined by the same rules which apply to the movement of the passenger whom the baggage is accompanying, whether or not the passenger and his baggage move to or from the station or terminal in the same vehicle. At least this should be the rule in the absence of some special arrangement, such as an agreement whereby the interstate carrier supplies vehicles for the transportation of passengers or baggage between the station or terminal and residences, hotels, or some designated central point. But when the passenger arranges for his own transportation and that of his luggage to or from a station or terminal prior or subsequent to an interstate journey. I think it is clearly immaterial whether the luggage accompanies the traveler, as in a taxicab, or whether it moves in special vehicle devoted solely to baggage. In other words, it is immaterial, insofar as the limits on the interstate movement of luggage are concerned, whether the luggage is small and can be carried by the passenger in the taxicab with him, or is so large that it must be handled by those specialized in such business and is therefore moved in a separate vehicle. Finally, I think that when the Supreme Court in the Yellow Cab case referred to different limits of an interstate shipment of goods and chattels, it was not considering the movement of luggage unaccompanied by the passenger, but was referring to the general movement of raw materials and finished goods in commerce, restraints on which are prohibited by the Sherman Act and the production of which comes within the Fair Labor Standards Act.

One additional difficulty is presented by certain language of the Court in the Yellow Cab case. In certain paragraphs of part III of its opinion, the Court refers to the fact that the transportation of persons and their luggage to and from Chicago railroad stations is intermingled "with the admittedly local operations of the Chicago taxicabs"; that a taxicab does not limit its service to railroad passengers but is required to serve every person in Chicago; that, when a taxicab driver serves a passenger either embarking upon or just finishing an interstate journey, it is, like any other haul within the city, "just another local fare." From these statements it might be concluded that a distinction should be drawn between ordinary taxicab operations and Parmelee's operations involving general baggage transfer and airport buses, since both of these operations of the defendant are restricted to incoming and outgoing passengers, most of whom undoubtedly move across state lines.

In the same paragraphs, however, in which these statements appear, the Court also mentions the fact that the taxicab companies "have no contractual or other arrangement with the interstate railroads"; that their fares are not paid or collected as part of the railroad fares; that the traveler has complete freedom to arrive at or leave the railroad station by any of a number of means of local transportation, of which taxicab service is only one and is contracted for independently of the railroad journey and may be used whenever

the traveler desires. These statements seem to indicate that what the Court had in mind was a general distinction between what it called taxicab operations, and Parmelee's inter-station transfer of passengers and luggage under exclusive contract with the carriers, which the Court had declared in part II of its opinion was "an integral step in the interstate movement."

■ The discussion of the Court's opinion in the preceding two paragraphs indicates that the defendant's general baggage transfer and airport bus operations cannot with complete consistency be regarded as local taxicab operations. I think, however, that the real rationale of the opinion lies in the Court's discussion of the "intensely practical concept (of interstate commerce) drawn from the normal and accepted course of business." In this connection the Court drew the distinction, which I have previously mentioned, between inter-station transfer of interstate travelers, which is in the stream of commerce, and hauling passengers to and from stations and terminals, which is a local operation preceding or following the interstate journey and not an integral part thereof.

I conclude that the defendant's general baggage transfer, and its operation of airport buses, are not in interstate commerce. The employees of the defendant who are engaged in these operations are not therefore within the scope of the Fair Labor Standards Act.

The Ninth, Tenth, and Eleventh Defenses

The final question for determination is whether the motor carrier exemption, the rail carrier exemption, or the service establishment exemption of the Fair Labor Standards Act applies to the defendant's inter-station transfer of railroad passengers and their baggage moving in interstate commerce. The carrier exemptions, sec. 13(b) (1) and (2), provide that the overtime compensation provisions of the Fair Labor Standards Act shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service under the Motor Carrier Act, Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., and (2) any employee of an employer subject to the provisions of the Interstate Commerce Act applicable to rail carriers. 29 U.S.C.A. § 213(b). The motor carrier exemption differs from the rail carrier exemption in that it is limited to those employees whose duties affect safety of operation. The applicable section of the Motor Carrier Act is not, with respect to common and contract carriers, in terms limited to employees whose duties affect safety of operation and equipment (49 U.S.C.A. § 304(a) (1) and (2); compare different language of sec. 304(a) (3) with respect to private carriers), but the section has been interpreted to limit the jurisdiction of the Interstate Commerce Commission in fixing maximum hours to those employees whose duties affect safety of operation. United States v. American Trucking Ass'ns, Inc., 1940, 310 U.S. 534, 60 S. Ct. 1059, 84 L.Ed. 1345. Since the defendant admits that, with four exceptions, all plaintiffs were engaged as drivers of vehicles, there is no question that they were engaged in a duty affecting the safety of operation. (The defendant asserts that the other four employees, who were engaged in supervisory and maintenance duties have been paid in full for all overtime while engaged in non-driving activities). To determine the question of the exemption of the plaintiffs from the overtime provisions of the Fair Labor Standards Act, it is therefore sufficient to determine that the defendant is either a motor carrier or a rail carrier subject to the jurisdiction of the Interstate Commerce Commission, without considering at the moment the service establishment exemption.

■ I am of the opinion that since the insertion of sec. 202(c) in the Motor Carrier Act by the Transportation Act of 1940, 54 Stat. 920, 49 U.S.C.A. § 302(c), the plaintiffs who were employed in the inter-station transfer activities of the defendant carrier have at all times been exempt from the provisions of the Fair Labor Standards Act under either the rail or motor carrier exemption.

Sec. 202(c), as originally passed and approved on September 18, 1940, provided, so far as relevant to this problem, as follows:

"(c) Notwithstanding any provision of this section or of section 203, the provisions of this part shall not apply—

"(1) * * *

"(2) to transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to part I, an express company subject to part I, a motor carrier subject to this part, or a water carrier subject to part III, in the performance within terminal areas of transfer, collection, or delivery services; but such transportation shall be considered to be performed by such carrier or express company as part of, and shall be regulated in the same manner as, the transportation by railroad, express, motor vehicle, or water to which such services are incidental."

This amendment to the Motor Carrier Act thus exempted from the provisions of the Act the designated transfer, collection, and delivery services, which include the type of services rendered by the defendant for railroad carriers in the inter-station transfer of passengers and baggage. But the amendment further provided that such transportation by motor vehicle under a contractual arrangement for a common carrier by railroad shall be considered to be performed by such rail carrier and shall be regulated in the same manner as the transportation by railroad to which the motor vehicle services are incidental. Thus from the effective date of Section 202(c) to its subsequent amendment, the employees of the defendant who were engaged in interstation transfer activities were regarded as engaged in railroad operations, and therefore were subject to the rail carrier exemption of the Fair Labor Standards Act.

On May 16, 1942, when section 202(c) was amended, 56 Stat. 300, to include freight forwarders among the exemptions from the Motor Carrier Act, it was also provided that, notwithstanding the designated exemptions from the provisions of the Act generally, the maximum hours provision of the Motor Carrier Act should nonetheless apply to the exempted operations. The relevant part of the amended section reads:

"(c) Notwithstanding any provisions of this section or of section 203, the provisions of this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation and equipment, shall not apply—

"(1) * * *

"(2) * * *

So far as maximum hours of employment are concerned, therefore, the provisions of section 204 of the Motor Carrier Act apply on and after May 16, 1942, and since that date the defendant's employees engaged in inter-station transfer operations have been within the motor carrier exemption of the Fair Labor Standards Act.

■ The plaintiffs have sued for unpaid overtime compensation from the effective date of the Fair Labor Standards Act of 1938 up to July 1, 1942. Subsequent to September 18, 1940, when section 202(c) was added to the Motor Carrier Act, those plaintiffs who were engaged in the inter-station transfer of passengers and baggage have been subject to either the rail carrier or the motor carrier exemption of the Fair Labor Standards Act with respect to maximum hours and overtime compensation. It is unnecessary to consider whether, prior to the effective date of section 202(c) the plaintiffs were within the motor or rail carrier exemptions, since the five-year statute of limitations under Illinois law pleaded by the defendant as the fourth and partial defense bars all claims arising prior to January 10, 1941, which is five years prior to the filing of the original complaint. Smith-Hurd Ill. Ann.Stat. c. 83, sec. 16. For the same reason it is also unnecessary to consider the service establishment exemption pleaded as the eleventh defense.

As the Supreme Court did in its opinion in United States v. Yellow Cab Company, cited above, this memorandum discusses, prior to the hearing of evidence, the circumstances bringing certain types of trans-

portation within the limits of interstate commerce and excluding other types, and in addition the law respecting the motor and rail carrier exemptions for the period within which the plaintiffs' claims could be brought. From the pleadings in this case, it appears that the defenses which I have sustained have disposed of all of the plaintiffs' claims. If it appears to plaintiffs' counsel that the claims of any of the more than one hundred plaintiffs are not barred by the foregoing rulings, leave is hereby granted to file an amended complaint within twenty days as to such plaintiffs. Subject to such leave, the complaint is dismissed for failure to state a claim upon which relief can be granted.