## CEDERBLADE et al. v. PARMELEE TRANSP. CO.

### No. 9468.

Circuit Court of Appeals, Seventh Circuit.

Feb. 25, 1948.

Frank P. Kronenberg, David Axelrod, Jack Goodman, and Carl L. Steiner, all of Chicago, Ill., for appellants.

Philip E. Ringer, M. Lester Reinwald, and Morris Sostrin, all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiffs are bus and truck drivers and custodians employed by the defendant who operates buses and trucks in the transportation of passengers and baggage for railroads entering the city of Chicago. The defendant, an independent contractor, transports from depot to depot in Chicago under its contracts with the railroads the railroads' passengers and their baggage. This is known as "collection and delivery service." The passengers and baggage transported from depot to depot in Chicago are moving in interstate commerce in the buses and trucks driven by the plaintiffs.

The plaintiffs, for themselves and all others similarly situated, sued the defendant for failure to pay the plaintiffs overtime

compensation from October 24, 1938, to June 30, 1942, as required by Section 207 of the Fair Labor Standards Act of 1938.[1] On a pre-trial conference the proceedings were so shaped as to present on a motion for summary judgment the question of whether the plaintiffs were included under Section 207 of the Act as to this overtime. The District Court dismissed the plaintiffs' second amended complaint, and the question, among others, is presented as to whether the employment of the plaintiffs was exempt from Section 207 of the Act.

Since we are of the opinion that the District Court properly dismissed the second amended complaint, we shall confine our opinion to this one proposition: Did the exemption in Section 213(b) (1) or (2) exclude the plaintiffs from the benefits of the Fair Labor Standards Act? This section provides:

"(b) The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; or (2) any employee of an employer subject to the provisions of sections 1-27 of Title 49."

We think that the operations of the defendant described in the second amended complaint are exempt for the entire period under Section 213(b) (2).

Prior to September 18, 1940, the effective date of the Transportation Act of 1940,[2] which amended the Motor Carrier Act of 1935,[3] the operations of the defendant were not those of a motor carrier subject to the provisions of the Motor Carrier Act, known as Part II of the Interstate Commerce Act, but such operations were part of the railroad operations and within Part I of the Interstate Commerce Act. The Motor Carrier Act of 1935 in its Section 203(a) (14) defined a common carrier by motor vehicle to include all such interstate or foreign commercial carriers "except to the extent that these operations are subject to the provisions of part I"—thus evidencing that Congress did not intend to include all interstate motor vehicle operations within the Motor Carrier Act and that Congress recognized that some such operations were already subject to the jurisdiction of the Interstate Commerce Commission under Part I of the Interstate Commerce Act. Norfolk Southern Bus Corporation v. Commissioner of Internal Revenue, 4 Cir., 107 F.2d 304, 306; Pick-Up and Delivery in Official Territory, 218 I.C.C. 441, 473. In fact, since 1912, the Commission has exercised this power under Part I of the Act over railroad operations of pick-up and delivery service by motor truck. American Trucking Ass'ns, Inc., v. United States et al., D.C., 17 F.Supp. 655, 657.

The services rendered in the instant case were analogous to those rendered in the case of Scott Brothers, Incorporated, 4 M. C.C. 551, that is, they were collection and delivery services within terminal areas and such services were in interstate commerce, pursuant to independent contracts with the several railroads. In the Scott Brothers case, supra, and in decisions of that tribunal following that case,[4] such services were held not to be under Part II of the Interstate Commerce Act, known as the Motor Carrier Act, but were a part of railroad operations under Part I of the Interstate Commerce Act. As a part of railroad operations, the collection and delivery services in which the defendant was engaged were exempt by Section 213(b) (2) of the Fair Labor Standards Act.

The applicable provision of the Motor Carrier Act of 1935, § 202, was amended by the Transportation Act of 1940, 49 U.S. C.A. § 302, so as to read as follows:

"Sec. 302. Application of provisions.

\* \* \* \* \* \*

"(c) Notwithstanding any provision of this section or of section 303, of this title, the provisions of this chapter \* \* \* shall not apply—

\* \* \* \* \* \*

"(2) to transportation by motor vehicle by any person (whether as agent or under

---

[1] 29 U.S.C.A. §§ 201–219.

[2] 54 Stat. 920, Act Sept. 18, 1940.

[3] 49 Stat. 543, Act Aug. 9, 1935, 49 U.S.C.A. §§ 301–327.

[4] E. g., Michigan Cab Company, Incorporated, 7 M.C.C. 701.

a contractual arrangement) for a common carrier by railroad subject to chapter 1 of this title, an express company subject to chapter 1 of this title, a motor carrier subject to this chapter, a water-carrier subject to chapter 12 of this title, * * * in the performance within terminal areas of transfer, collection, or delivery service; but such transportation shall be considered to be performed by such carrier, express company * * * as part of, and shall be regulated in the same manner as, the transportation by railroad, express, motor vehicle, or water, * * * to which such services are incidental."

This amendment clarified and confirmed the construction of the Act which had been adopted by the Interstate Commerce Commission as evidenced by the above-cited cases. Fleming v. Chicago Cartage Co., 7 Cir., 160 F.2d 992, 995, 996.

At all times since the enactment of the Motor Carrier Act of 1935, Part I of the Interstate Commerce Act contained provisions substantiating this construction. Section 1 (3) of the Interstate Commerce Act[5] provides: "The term 'railroad' as used in this chapter shall include * * * terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein * * *."

"Transportation" is defined in the same section as follows: "The term 'transportation' as used in this chapter shall include locomotives, cars, and other vehicles, vessels, and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract * * *."

From this it would follow that when a carrier uses terminal facilities such as motor vehicles to carry passengers and property within the terminal area, such as Chicago depot to depot service, said motor vehicles formed part of a railroad engaged in commerce, although the motor vehicles used are not owned by the rail carrier but are contracted for with independent contractors, as they were with the defendant in the instant case.

That Congress never intended to relinquish all regulation of such services as the defendant was rendering under contract with the railroads is made further manifest by the last clause of 49 U.S.C.A. § 302(c) (2) as amended by the Transportation Act of 1940:

"such transportation shall be considered to be performed by such carrier * * * as part of, and shall be regulated in the same manner as, the transportation by railroad * * * to which such services are incidental."

Although the services are terminal area transportation by motor vehicle, as in the instant case, under the provisions of the statutes just cited such services are to be considered as transportation by the railroads, to which the transportation is incident. It seems to us, therefore, that such transportation was railroad transportation and within the exemption of Section 213(b) (2) of the Fair Labor Standards Act.

The plaintiffs, in order to establish the applicability of the Fair Labor Standards Act to the defendant for the period September 18, 1940, to June 30, 1942, rely upon a footnote dictum of the Supreme Court in Levinson v. Spector Motor Service, 330 U.S. 649, 659, 67 S.Ct. 931, 91 L.Ed. 1158, which states that the 1940 amendment to the Motor Carrier Act by the Transportation Act of 1940 excluded therefrom motor vehicle collection and delivery services within terminal areas. The footnote states further that this amendment automatically excluded from the regulation of the Interstate Commerce Commission employees so engaged and included them within the Fair Labor Standards Act. This dictum applies to facts readily distinguishable from the situation presented in our case. In Levinson, the court was concerned with motor carrier terminal facilities incident to *other motor carriers*— if the 1940 amendment excluded such facilities from the Motor Carrier Act, they would no longer be exempt from the Fair Labor Standards Act under the exemption in Section 213(b) (1); in the instant case, however, we are concerned with motor carrier terminal facilities incident to *a rail carrier*. The 1940 amendment to the Motor Carrier Act confirms the exclusion of these motor carrier terminal facilities from the Motor Carrier

Act—and thus they are not exempt from the Fair Labor Standards Act within its exemption Section 213(b) (1). However, this same amendment states plainly that such motor carrier terminal facilities, incident to a rail carrier, shall be considered and regulated just as the facilities to which they are incident, in the instant case, a railroad. If so considered, the defendant's terminal facilities fall within Section 213(b) (2) of the Fair Labor Standards Act, the exemption for employees of a railroad. The Levinson dictum is therefore not applicable to the facts in the instant case.

On May 16, 1942, the Motor Carrier Act was further amended, 56 Stat. 300, 49 U. S.C.A. § 302(c). The plaintiffs in their complaint seek overtime compensation for services rendered after that time and prior to June 30, 1942. On oral argument they admitted that the 1942 amendment clearly excluded them from the benefits of Section 207 of the Fair Labor Standards Act, and they conceded that they are not entitled to compensation for the period May 16, 1942, to June 30, 1942.

Therefore, the overtime compensation sued for in the second amended complaint under Section 207 of the Fair Labor Standards Act is not recoverable because the services performed by the plaintiffs during that time were exempt from the application of the Act. 29 U.S.C.A. § 213(b) (2). The District Court properly dismissed the plaintiffs' second amended complaint, and the judgment is affirmed.