**Peter J. BRENNAN,\* Secretary of Labor, Plaintiff,**

**v.**

**S & M ENTERPRISES, a partnership, et al., Defendants.**

**Civ. A. No. 2357-71.**

United States District Court, District of Columbia.

July 16, 1973.

---

\* Since this action was filed, Peter J. Brennan has succeeded James D. Hodgson as Secretary of Labor and has been substituted as plaintiff pursuant to Fed. R.Civ.P. 25(d)(1).

596

James D. Henry, David A. Drachsler, U. S. Dept. of Labor, Washington, D. C., for plaintiff.

Bernard J. Casey, Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

This is an action brought by the Secretary of Labor (Secretary) to enjoin the defendants from violating the provisions of sections 7(a)(1) and 15(a)(2) of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§ 207(a)(1) and 215(a)(2) (1970),[1] and to restrain the withholding of the payment of overtime compensation allegedly due certain of the defendants' employees under the Act. The defendants are the owners and operators of three parking garages in the downtown business section of the District of Columbia. Jurisdiction is based on 29 U.S.C. § 217 (1970). The case is now before the Court on cross-motions for summary judgment.

The defendants have agreed to the Secretary's statement of material facts not in issue submitted pursuant to Local Rule 9(h), except that they deny that any overtime compensation is due any of their employees. Thus the Court finds that no material facts are in issue and the case is ripe for summary disposition.

The individual defendants, Donald E. Swagart and Willis R. Manning, Jr., apparently operate the three defendant parking garages through S & M Enterprises. Ownership of two of the three garages is vested in the estate of Harry A. Swagart, Jr., of which the individual defendants are trustees. The third garage is 50 percent owned by one of the other two garages. The defendants admit that the separate defendants consti-

1. 29 U.S.C. § 207(a)(1) reads:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employ-

ment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 215(a)(2) reads in pertinent part:

(a) . . . [I]t shall be unlawful for any person—

(2) to violate any of the provisions of . . . section 207 of this title

. . .

tute a single enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r) (1970).[2] Each of the garages is admitted since March 1, 1969, to have had over $250,000 annual dollar volume of sales made or business done, thus removing them from the retail exemption of 29 U.S.C. § 213(a)(2) (1970). The defendants admit that they have had at least two employees engaged in parking, moving and handling automobiles which have moved across state lines. Furthermore, the defendants admit that they have failed to pay their employees overtime compensation at one and one-half times their regular rate of pay for all hours worked over forty in a given workweek.

The defendants seek to avoid injunctive relief from being entered against them on two grounds: (1) that their employees are not in an "enterprise engaged in commerce or in the production of goods for commerce" within section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) (1970), and thus do not fall within the bounds of the overtime pay provisions of section 7(a)(1) of the FLSA, quoted in note 1, *supra;* and (2) that assuming that a violation exists, there is no need for injunctive relief. Finally, a reduction of any payment of overtime wages determined to be due is sought by urging that the two year statute of limitations provision of 29 U.S.C. § 255(a) (1970) should be applied rather than the three year period for willful violations contained in that same section.[3] The Court finds for the Secretary on each of these points.

### Engaging in Commerce

Coverage under the overtime pay provisions of section 7(a)(1) of the FLSA is extending to any employee who is employed in "an enterprise engaged in commerce or in the production of goods for commerce." Section 3(s)(1), 29 U.S.C. § 203(s)(1), defines such an enterprise as one which has

> employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—
>
> > (1) . . . is an enterprise whose annual gross volume of sales made or business done is not less than $250,000. . . .

As set forth above, the defendants admit that each of the garages has done over $250,000 business per year since March 1, 1969, the date from which overtime compensation is. sought. Thus the defendants' argument that they are not covered by section 3(s)(1) rests on their assertion that their employees, who admittedly move, park, and handle automobiles which have moved across state lines, are not in an enterprise engaged in commerce.

The defendants' position is that the activity of their employees cannot constitute engagement in commerce because the automobiles involved are goods already in the hands of the ultimate consumer and thus exempted by section 3(i) of the FLSA, 29 U.S.C. § 203(i) (1970). Principal reliance is placed on

2. 29 U.S.C. § 203(r) reads in pertinent part:
 "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements . . .
 Because the defendants admit enterprise coverage under § 3(r), there is no need

to determine the degree of community of ownership and control and the unification of operation necessary to bring separate businesses under § 3(r) coverage. Cf. Wirtz v. Barnes Grocer Co., 398 F.2d 718 (8th Cir. 1968).

3. The defendants also seek reductions in any payments ordered to be made to certain claimants with whom they have already settled through the District of Columbia Minimum Wage Board. The plaintiff does not object if evidence of those settlements is submitted.

Shultz v. Wilson Building, Inc., 60 CCH Labor Cases ¶ 32,218 (S.D.Tex.1969).[4] In *Wilson Building,* the Secretary of Labor asserted that the parking of automobiles which had at some time in the past moved in interstate commerce before delivery to their owners constituted an enterprise engaged in handling goods in commerce under section 3(s)(1). The Court rejected that argument, holding that the goods had come to rest upon delivery to their owners and had thus been removed from the chain of commerce.

The Secretary, however, does not rely in this case on the handling of goods theory asserted in *Wilson Building.* Rather he properly points out that section 3(s)(1) covers the defendants' employees if at least two employees are engaged either in commerce or in producing goods for commerce (which includes handling goods in commerce, as in *Wilson Building*). Republic Pictures Corp. v. Kappler, 151 F.2d 543, 545 (8th Cir. 1945). Thus the Secretary is entitled to summary judgment if the defendants' employees are engaged in commerce, a question that is answered by determining whether interstate commerce would be impeded or abated without the services of the employees. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Although Congress did not exercise its full authority in the passage of the FLSA by requiring that employees be "engaged in commerce" rather than merely in activity affecting commerce, the term "engaged in commerce" is to be liberally construed. Overstreet v. North Shore Corp., 318 U.S. 125, 128, 63 S.Ct. 494, 87 L.Ed. 656 (1943).

The only two reported decisions other than *Wilson Building, supra,* dealing with parking lot or garage employees have both tried to enumerate the factors to be weighed in determining whether employees are "engaged in commerce." In Jackson v. Airways Parking Co., 297 F.Supp. 1366 (N.D.Ga.1969), the Court found that employees at the defendant's lot at the Atlanta Municipal Airport were engaged in commerce and thus covered by the FLSA. In reaching that conclusion, the Court looked to economic factors as well as common understanding. Thus the Court found the following factors most important: the economic independence of the business; the nature and extent of the work claimed to be part of interstate commerce; the degree to which admittedly interstate commerce would be impeded without the employee activity that is the subject of the complaint; the geographic relationship of the activity in a commonsense understanding of interstate activity; the degree to which contractual and practical relationships brought the defendant into interstate operations; the facilitation of interstate transactions or communications; and the extent to which the activity is entwined with the continuous stream of commerce. *Id.* at 1373.[5]

In *Jackson* the Court found close contractual and economic ties between the airport, an admittedly interstate facility, and the defendant's lot. Moreover, the geographic isolation of the lot made its dependence on the interstate airport clear. The lack of competing facilities further indicated that interstate travellers were dependent upon and used the lot, and that interstate commerce would have been impeded without its presence.

The second parking lot case, Hodgson v. Continental Parking Corp., 64 CCH Labor Cases ¶ 32,429 (C.D.Cal.1970), in-

4. The decision in *Wilson Building* cited was on a motion to dismiss, which was denied because other parts of the defendant's business were found to be engaged in commerce. Coverage under the FLSA was ultimately upheld in Shultz v. Wilson Building, Inc., 320 F.Supp. 664 (S.D.Tex. 1970), aff'd sub nom. Brennan v. Wilson Building, Inc., 478 F.2d 1090 (5th Cir., Apr. 27, 1973), petition for cert. filed, 42 U.S.L.W. 3055 (U.S. July 2, 1973) (No. 73–45).

5. Several other factors were listed: the structure and operation of the company; the competitive status of the firm; and the extent to which the employees' activities enable instrumentalities to move interstate commerce effectively.

volved employees at parking facilities near Los Angeles International Airport. The Court weighed the factors set forth in *Airways Parking, supra,* and found coverage under the FLSA.

The defendants claim *Airways Parking* and *Continental Parking* are inapposite because of the lack of dependence of the defendants' garages on an interstate facility and the absence of special contractual relationships with the city government that characterized those cases. Although these are differences, they are not controlling.

The defendants' garages operate in the downtown business section of Washington, D. C. Admittedly they do not depend on one interstate facility for their revenue. It cannot be argued, however, that the defendants' employees do not facilitate interstate travel by commuters and shoppers from the surrounding Maryland and Virginia suburbs and by tourists from around the United States. Defendant Manning in his deposition admits that the garages sell monthly parking contracts to commuters (pp. 13–14), have contracts for parking with several hotels (pp. 14–15), and many downtown businesses (pp. 15–16). These contracts clearly facilitate the interstate transactions and are entwined with the continuous stream of interstate commerce. Moreover, given the unique geographic status of Washington, D. C., a common-sense approach to interstate commerce requires the conclusion that the employees of the defendants are engaged in commerce. Interstate commerce would be impeded without the employees' activity.

The presence of competing parking facilities is irrelevant. Reliance on the lack of competition in *Airways Parking* and *Continental Parking* was only to demonstrate the relationship of the lots to the interstate facility. In the instant case the relationship of the lots to interstate travel has been shown previously. Defendants cannot claim exemption from the FLSA because of competition if they are otherwise found to be engaged in commerce. The Court finds that the defendants' employees are engaged in commerce and that the defendants are an enterprise engaged in commerce within the meaning of section 3(s)(1) and thus subject to the overtime pay provisions of section 7(a)(1) of the FLSA.[6]

### Need for an Injunction

The Secretary seeks an injunction to insure the defendants' future compliance with the FLSA. The issuance of an injunction is discretionary with the trial court, but an injunction works no hardship on an employer because it merely requires him to do what the FLSA demands anyway—to comply with the law. *Shultz v. Hinojosa,* 432 F.2d 259, 267 (5th Cir. 1970). "The minimal inconvenience to the employer balanced against the difficulty of enforcing the Act to the public benefit, argues strongly for issuance of an injunction." *Wirtz v. B. B. Saxon Co.,* 365 F.2d 457, 463 (5th Cir. 1966). Once past violations have been established, only the most compelling circumstances will require reversal of the issuance of an injunction. *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 517 (5th Cir. 1969). If an employer has been previously investigated, an injunction is legally demanded if the violations are plain, and deal with easily understandable matters. *Shultz v. Hinojosa, supra,* 432 F.2d at 260. The facts of this case mandate that an injunction be issued.

6. The defendants cite several other cases in support of their motion for summary judgment. Cederblade v. Parmelee Transp. Co., 94 F.Supp. 965 (N.D.Ill. 1947), aff'd on other grounds, 166 F.2d 554 (7th Cir. 1948), Wirtz v. National Electric Co., 285 F.Supp. 30 (W.D.Okla. 1968), aff'd sub nom. Shultz v. National Electric Co., 414 F.2d 1225 (10th Cir. 1969), and Mateo v. Auto Rental Co., 240 F.2d 831 (9th Cir. 1957) all dealt with the issue of defining an end to the stream of commerce. In this case the defendants' activities clearly are within that stream as the cars move in and out of Washington, D. C. daily.

The individual defendants have been investigated before by the Secretary for overtime compensation violations at one of the defendant garages. By a stipulation of dismissal filed March 20, 1970, in Shultz v. S & M Enterprises, Civil Action No. 1836–69 (D.D.C.), the defendants promised future compliance with the overtime pay provisions of the FLSA at each of the three garages involved in the present suit. The Secretary then agreed to dismiss the case without seeking an injunction. Neither of the individual defendants took any steps to bring the garages into compliance with the FLSA (Swagart Deposition p. 36, Manning Deposition pp. 18–20). By their adoption of the Secretary's statement of material facts not in issue, they have admitted that they did not pay overtime compensation to their employees after the stipulation was entered into, although they assert in affidavits filed in support of their cross-motion for summary judgment that they are now in compliance.

 The individual defendants have taken a reckless and cavalier attitude towards their responsibilities under the FLSA. Their continued violations of the law after the prior investigation require that an injunction be issued to compel future compliance so that the purposes of the FLSA are not subverted. Shultz v. Parke, 413 F.2d 1364, 1368 (5th Cir. 1969), on remand sub nom. Hodgson v. Parke, 324 F.Supp. 1297, 1300 (S.D.Tex.1971).

The Secretary seeks the payment of back wages for the three years prior to the date of filing suit under the provision of 29 U.S.C. § 255(a) (1970) which extends the statute of limitations from two to three years for willful violations. The defendants claim that any failure to come into compliance with the FLSA was the result of misunderstandings and ordinary negligence. The facts outlined above clearly demonstrate that the defendants made no efforts to come into compliance with the FLSA, but rather disregarded their duties under it. As the Fifth Circuit held in

Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir.), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), violations are willful when

there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?

The prior investigation by the Secretary put the defendants on notice that the FLSA "was in the picture." When coupled with their failure to implement steps to come into compliance with the FLSA, the evidence is substantial that the violations were willful within the meaning of the statute and thus are subject to the three year period of limitations. Cf. Hodgson v. Veterans Cleaning Service, Inc., 351 F.Supp. 741, 746–747 (M.D.Fla.1972).

The defendants have claimed a right to set off certain claims already paid, note 3 *supra*. The parties will submit an appropriate Order within 10 days of the date of this Opinion incorporating any setoff to which the defendants are entitled.