812 F.2d 8
 258 U.S.App.D.C. 404
 PENNSYLVANIA PUBLIC UTILITY COMMISSION, Petitioner,
v.
UNITED STATES of America and the Interstate Commerce
Commission, Respondents,
Air Couriers International, Inc., National Association of
Regulatory Utility Commissioners, Intervenors.
 No. 85-1544.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 19, 1986.
Decided Feb. 24, 1987.
 
 Petition for Review of an Order of the Interstate Commerce commission.
 H. Kirk House, with whom Charles F. Hoffman, Harrisburg, Pa., was on brief for petitioner.
 Timm Abendroth, Atty., Interstate Commerce Commission, Washington, D.C., for respondents. Robert S. Burk, Gen. Counsel, Henri F. Rush, Deputy Gen. Counsel, Essie F. Stevens, Atty., Interstate Commerce Commission, John J. Powers and John P. Forte, Attys., Dept. of Justice, Washington, D.C., were on brief for respondents. Catherine G. O'Sullivan and Robert B. Nicholson, Attys., Dept. of Justice, Washington, D.C., entered appearances for respondents.
 
 
 1
 John M. Ballenger, Alexandria, Va., was on brief for intervenor, Air Couriers International, Inc.
 
 
 2
 Charles D. Gray and Genevieve Morelli, Washington, D.C., were on brief for intervenor, National Association of Regulatory Utility Commissioners.
 
 
 3
 Before BORK and BUCKLEY, Circuit Judges, and OBERDORFER, District Judge.*
 
 
 4
 Opinion for the Court filed by District Judge OBERDORFER.
 
 OBERDORFER, District Judge:
 
 5
 This is an appeal from a decision of the Interstate Commerce Commission ("ICC") granting the petition of Air Couriers International, Inc. ("ACI") for a declaratory order. The Commission found that the movement of transient airline flight crews between an airport in one state and temporary hotel accommodations in the same state is interstate in nature and exempt from the Commission's jurisdiction under the provisions of 49 U.S.C. Sec. 10526(a)(8)(A).[1] Because we find that the Commission did not abuse its discretion in granting the petition, we affirm.
 
 
 6
 ACI provides ground transportation services to and from airports. In the summer of 1983, ACI contracted with United Airlines ("United") to transport its employees from Baltimore Washington Airport to a hotel in Columbia, Maryland and back again.[2] After this contract was made, ACI was advised by the Maryland Public Service Commission ("MPSC") that the proposed service was intrastate in nature and subject to state regulation. On July 15, 1983, ACI filed an application for authorization from the MPSC to operate this service. This application was opposed by an existing certified carrier and was denied. ACI did not request a formal hearing before the MPSC and took no further action on its application. Instead, on December 2, 1983, ACI filed a petition for a declaratory order with the Interstate Commerce Commission under 5 U.S.C. Sec. 554(e). This petition requested a determination that this service was interstate in nature and exempt from the ICC's jurisdiction under the "incidental to air" exception. 49 U.S.C. Sec.10526(a)(8)(A). The Commission published a notice of the petition in the ICC Register and the Federal Register and invited written comment. The Pennsylvania Public Utility Commission ("PPUC"), among others, filed comments opposing the petition. On July 1, 1985, the ICC issued its decision holding, first, that the prearranged transportation of aircrew members from airports to hotel accommodations was exempt from the ICC's jurisdiction as "transportation of passengers by motor vehicle incidental to transportation by aircraft" under 49 U.S.C. Sec. 10526(a)(8)(A), and second, that the transportation was interstate in character because it was provided pursuant to a "common arrangement" between the air carrier and the motor carrier.[3] The PPUC has petitioned this Court for review of the ICC's decision. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 2342(5).
 
 
 7
 Petitioner argues here that the ICC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). More specifically, the PPUC maintains that previous court and ICC decisions required the Commission to hold that motor transportation of passengers between an airport in one state and points in the same state is not interstate in nature unless it is pursuant to a contract for continuous interstate travel by a fare paying passenger. We have considered the Commission's decision in light of the precedents cited by the petitioner and we hold that the ICC did not abuse its discretion in determining that the transportation at issue here was interstate.
 
 
 8
 The question whether transportation that occurs entirely within one state but that is part of a continuous interstate journey is part of interstate commerce has been previously considered by courts in the context of the Sherman Act and the Fair Labor Standards Act. These precedents have been consulted by the ICC in determining the scope of its interstate jurisdiction. See Motor Transportation of Passengers Incidental to Transportation by Aircraft, 95 M.C.C. 526, 536-37 (1964). We have examined these cases and we find that they do not require the result urged by the petitioner but rather are consistent with the ICC's determination.
 
 
 9
 In United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Supreme Court considered whether taxi cab service in Chicago fell under the provisions of the Sherman Act. The Court first examined an exclusive contract between a cab company and two railroad terminals for the transportation of interstate passengers between the two stations. The passengers received this service as part of their contract with the railroads. The Court held that such transportation was in interstate commerce, reasoning that
 
 
 10
 [w]hen persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character. That portion must be viewed in its relation to the entire journey rather than in isolation. So viewed, it is an integral step in the interstate movement.
 
 
 11
 Id. at 228-29, 67 S.Ct. at 1565-66 (citations omitted). By contrast, the Court held that general taxicab business in the city of Chicago was "too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act." Id. at 230, 67 S.Ct. at 1566. The decision relied on a number of factors including the fact that none of the general cab companies served only railroad passengers, that many of the trips were purely local in character, that these local cab companies did not have a contractual arrangement with the railroad and that they did not have their fares collected as part of the railroad fares. Id. at 230-32, 67 S.Ct. at 1566-67. For these reasons, the Court found that the local cab companies' relationship to interstate travel was "only casual and incidental." Id. at 231, 67 S.Ct. at 1567.
 
 
 12
 Petitioner argues that the Yellow Cab case and its progeny preclude the ICC from finding that local transportation is interstate unless it involves a "contract ... in the nature of a through-ticket for continuous passage of a fare paying passenger." Petitioner's Brief at 14. We do not agree. While the Yellow Cab Court did note that the Chicago taxi cabs did not have "their fares paid or collected as part of the railroad fares," id. at 231, 67 S.Ct. at 1567, this was merely one of a number of factors the Court considered in making the determination that this service's relationship to interstate commerce was "only casual and incidental." The Court also noted that the cabs did not serve only railroad passengers and did not have a contractual arrangement with the railroads. Id. at 231, 67 S.Ct. at 1567. The Yellow Cab case therefore suggests that a variety of the factors bearing on the character of the transportation should be considered in determining whether it is sufficiently related to the stream of commerce to be considered interstate. Here, there is an explicit contract between United Airlines and ACI for the transportation of United's personnel. Furthermore, the ACI limousine service is not a part of a regularly scheduled service for other paying passengers. Nor is the service used to transport passengers to a final destination within the state. Rather, ACI takes airline personnel to temporary hotel accommodations and then returns them to the airport to continue their interstate journey. The ACI service therefore resembles local cab service in some respects and the special inter-station service of Yellow Cab in other respects. Thus, while Yellow Cab suggests some of the factors that the ICC might consider in reaching its decision, it does not mandate any particular outcome in this case.
 
 
 13
 Nor are the other decisions relied on by the petitioner determinative. The case law dealing with the meaning of interstate commerce under the Fair Labor Standards Act merely underscores the principle established in Yellow Cab that the degree of contact between the interstate carrier and the local transportation is an important factor. In Airlines Transportation Inc. v. Tobin, 198 F.2d 249 (4th Cir.1952), for example, the court held that an airport limousine service which transported only airline passengers under contracts with interstate carriers was in "interstate" commerce for the purposes of the Fair Labor Standards Act. The contracts expressly provided that the airline companies had the right to specify the schedule of the service, the type of vehicles used and the uniform and discipline of drivers. Id. at 250. By contrast, in Mateo v. Auto Rental Company, 240 F.2d 831 (9th Cir.1957), the court found that a limousine service which primarily (but not exclusively) serviced airline passengers was not in interstate commerce. While the service did operate under contractual agreements with the airline, the court found that "[i]n actual practice, there was little need for the agreements" which were not recognized by the state Aeronautics Commission. Id. at 833. The court therefore concluded that there were "significant factual dissimilarities which differentiat[ed] the Tobin case." Id. at 834. See also Cedarblade v. Parmalee Transportation Co., 94 F.Supp. 965 (N.D.Ill.1947), aff'd on other grounds, 166 F.2d 554 (7th Cir.1948).
 
 
 14
 We therefore hold that the ICC did not run afoul of any established court precedents when it held that the service performed by ACI was in interstate commerce. Nor is this result in conflict with any prior ICC decisions. The ICC has drawn a decisional line between ground transportation of airline passengers which is and is not interstate. In Motor Transportation, 95 M.C.C. 526 (1980), the ICC adopted regulations prescribing the circumstances under which the motor transportation of passengers fell within the exception for transportation incidental to transportation by aircraft. That decision also considered whether the motor transportation of passengers who have had or will have an immediately prior or subsequent movement by air is in interstate commerce. The Commission held that such transportation was not in interstate commerce if "the carrier of passengers operat[ed] wholly within a State, selling no through tickets, and having no common arrangements with connecting out-of-State carriers." Id. at 536. In the later case of Kimball-Petition for Declaratory Order, 131 M.C.C. 908 (1980), the Commission adopted the corollary principle that motor transportation between an airport and another point in the same state is "interstate movement" where "there is an arrangement (referred to as a 'common arrangement' or 'through ticketing') between the motor carrier and the air carrier for continuous passage or interchange." Id. at 918 (emphasis added). Kimball made clear that the term "common arrangement" does not include a "package tour" involving both air and ground transportation that was arranged by a third party (such as a travel agent). Instead, the Commission held that a "common arrangement" exists only when there is "an arrangement between the motor carrier and the air carrier." Id. at 918. In this case, the ICC reasonably concluded that there was a common arrangement because ACI operated pursuant to an explicit contract with United Airlines.
 
 
 15
 Petitioner urges this Court to find that a "common arrangement" requires not only that there be a contract between the motor and air carriers but also that this contract be for the transportation of a fare paying passenger who has purchased a "through ticket" for the entire journey. It argues that since airline personnel are not paying passengers on the airline flight and receive the limousine service as a benefit of their employment, the ACI/United contract can not qualify as a "common arrangement." The Commission's decision explicitly rejected the PPUC's contention that a "common arrangement" must involve some kind of "through ticketing" for paying passengers. Instead, the Commission held "[t]o qualify as a bona fide arrangement there must be either a through ticket or other through arrangement between the motor carrier and the air carrier." Petitioner's Appendix at 43 (emphasis in the original). We can not hold that this decision was arbitrary and capricious or not in accord with existing law. As the Commission noted, prior decisions had referred to a "common arrangement" or "through ticketing." Id. The Commission was not, therefore, constrained to hold that all common arrangements must involve through ticketing. To the contrary, the Commission has considerable discretion to interpret its own term of art and no court should override a Commission determination unless it is unreasonable. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). Petitioner has identified no persuasive reason why the airline crews' status as employees of the airline should preclude an ICC determination that the ACI/United contract constitutes a "common arrangement" for interstate travel. In view of the foregoing, the decision of the ICC that this service is a part of interstate commerce will be affirmed.
 
 
 16
 The ICC also found that this transportation fell within the "incidental to air" exemption from federal regulation. 49 U.S.C. Sec. 10526(a)(8)(A). This statute provides that the ICC does not have jurisdiction over "transportation of passengers by motor vehicle incidental to transportation by aircraft." The Commission's regulations provide that the transportation of passengers by motor vehicle is transportation incidental to transportation by aircraft provided
 
 
 17
 "1) that it is confined to the transportation of passengers who have had or will have an immediately prior or immediately subsequent movement by air and 2) that the zone within which motor transportation is incidental to transportation by aircraft ... shall not exceed in size the area encompassed by a 25 mile radius of the boundary of the airport at which the passengers arrive or depart...."
 
 
 18
 See 49 C.F.R. Sec. 1047.45; Motor Transportation, 95 M.C.C. at 538. There is no dispute that the United employees have had an immediately prior movement by air and will be transported to hotel accommodations which are within 25 miles of the airport. And regardless of whether these employees are "passengers" for purposes of the airplane journey, they are clearly passengers of the motor carrier, ACI. We therefore see no reason to disturb the Commission's decision that this exemption applies to the service provided by ACI.
 
 
 19
 The record in this case demonstrates that the Commission's determination that the transportation of flight crew personnel to temporary hotel accommodations is within interstate commerce and exempt from the Commission's jurisdiction was reasonable. Accordingly, the petition for review must be
 
 
 20
 Denied.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. Sec. 292(a)
 
 
 [1]
 That statute provides that:
 The Interstate Commerce Commission does not have jurisdiction under this subchapter over ... transportation of passengers by motor vehicle incidental to transportation by aircraft.
 
 
 [2]
 ACI transports aircrew personnel under similar contracts at different airports. See Petitioner's Appendix at 4, 40
 
 
 [3]
 Petitioner claims that "the ICC [took] these two questions in the wrong order" and that its resolution of the first question "colored its approach to the issue raised in this petition." Petitioner's Brief at 8. While an agency usually considers whether it has jurisdiction over an activity before considering any other issue regarding that activity, we do not find, on the facts of this case, that the ICC acted improperly in considering the statutory exemption issue first