Danny **WILLIAMS**, on or behalf of himself and all other Plaintiffs similarly situated, known and unknown, Plaintiffs,

v.

**ALEX'S TRANSPORTATION, INC.,**
a New Mexico corporation,
Defendant.

No. 96 C 550.

United States District Court,
N.D. Illinois,
Eastern Division.

July 16, 1997.

John William Billhorn, William J. Sneckenberg & Associates, Chicago, IL, for Plaintiffs.

Charles W. Pautsch, Wessels & Pautsch, Milwaukee, WI, Gregory Harvey Andrews, Wessels & Pautsch, P.C., St. Charles, IL, Renee LeGrand Powell, Wessels & Pautsch, Chicago, IL, for Defendant.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant's Motion for Summary Judgment. For the following reasons, the motion is granted.

### I. FACTS

Defendant, Alex's Transportation, Inc. ("Alex's"), contracts with a number of major railroad companies to provide crew hauling services. Alex's drivers haul railroad crews from (1) railyard to railyard, (2) hotels to railyards, and (3) hotels and railyards to trains at random points along the rail lines throughout the states of Illinois, Kansas, Texas, Arizona, New Mexico and their respective neighboring states.

Plaintiff, Danny Williams ("Williams"), drove for Alex's for approximately three weeks at Alex's Illinois facility. Alex's Illinois, facility serves the following: all of Illinois; Hammond, Indiana; LaCrosse Wisconsin; and Ft. Madison, Iowa. At the start of his employment, Williams read and signed Alex's job description. Alex's job description states that he would be responsible for transporting "trainmen over specified, regular and irregular routes to local or distant points according to railroad time schedule and location preference." (Williams Dep. at Ex. 1.)

On a given day, Williams did not know where he would be traveling. Williams would simply punch in and wait for a call from a dispatcher. When a railroad company's dispatcher called Williams with a route, it could mean that he was traveling anywhere in Illinois, or to Hammond, Indiana, LaCrosse, Wisconsin, or Ft. Madison, Iowa. During Williams' three week employment, he did in fact travel once out of the State of Illinois to LaCrosse, Wisconsin.

Because Alex's did not pay Williams overtime compensation pursuant to 29 U.S.C. § 207 during his employment, Williams has brought the instant action. Alex's moves for a summary judgment and argues that the

overtime provisions of the Fair Labor Standards Act ("FLSA") are not applicable to Alex's because Williams performed exempt motor carrier and railroad carrier work.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations nor can it choose between competing possible inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) The court views the record, and resolves all reasonable inferences drawn from the record, in the light most favorable to the non-moving party. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.1997). Accordingly if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted. *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir.1993).

### A. Motor Carrier Exemption

The FLSA provides that employers do not have to pay overtime compensation to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49...." 29 U.S.C. § 213(b)(1). Section 31502 provides that the Secretary of Transportation ("SofT") has the authority to regulate "employees of, and safety of operation and equipment of, a motor carrier...."

49 U.S.C. § 31502(b)(1). "The term 'motor carrier' means a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12); *see* 49 U.S.C. § 31501(2).

▮ When a motor carrier relies on the motor carrier exemption to defeat employees' claims for overtime compensation, the exemption is construed narrowly against the carrier. *Turk v. Buffets, Inc.*, 940 F.Supp. 1255, 1259 (N.D.Ill.1996) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n. 11, 80 S.Ct. 453, 457 n. 11, 4 L.Ed.2d 393 (1960)). Thus, the carrier bears the burden of proving that the exemption applies to its employees. *Id.*

▮ The exemption is clearly applicable to drivers if their company engages in more than de minimis interstate commerce. *Garcia v. Pace Suburban Bus Serv., a Div. of Regional Transp. Auth.*, 955 F.Supp. 75, 77 (N.D.Ill.1996) (citing *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947)). Pursuant to a notice of interpretation, 46 Fed.Reg. 37,902 (1981), to which the court defers, SofT jurisdiction extends to a driver "[i]f in the regular course of employment a driver is, or could be, called upon to transport a shipment in interstate commerce...." 46 Fed.Reg. 37,902 (1981). "[E]ven a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the [SofT]." *Id.*

In two of the cases cited in the notice of interpretation, courts found SofT jurisdiction over drivers who had not driven in interstate commerce because there was a reasonable probability that those drivers would be assigned to an interstate run in the regular course of employment. *Id.* (citing *Morris* 322 U.S. 422, 68 S.Ct. 131; *Starrett v. Bruce*, 391 F.2d 320 (10th Cir.1968)). In determining whether there is a reasonable probability that a driver would be assigned to an interstate run, courts look to whether the "carrier held interstate authority, advertised for interstate work, [and] assigned drivers indiscriminately to that work...." *Id.* at 37,903.

In addition, the notice of interpretation also provides that "[e]vidence of driving in interstate commerce or being subject to be-

ing used interstate commerce should be accepted as proof that the driver is subject to [SofT authority] for a 4–month period from the date of the proof." *Id.*

■ Nevertheless, relying on 29 C.F.R. §§ 780.10–.11, Williams argues that the motor carrier exemption can only be applied on an employee-by-employee, and week-by-week basis. Thus, Williams argues that the exemption can only apply to Williams if Alex's assigned him to interstate runs every week of his employment 29 C.F.R. §§ 780.10–11, however, is an agricultural exemption regulation. Williams does not offer any explanation as to why the agricultural exemption regulation should apply to a motor carrier transporting railroad crews. Thus, Williams' reliance on the employee-by-employee, and week-by-week analysis suitable under the agricultural exemption is misplaced. As such, the court will analyze whether Alex's engaged in more than de minimis interstate commerce, subjecting Williams to a reasonable probability of being assigned to an interstate run.

With regard to Alex's interstate authority. Williams argues that Alex's has not shown it has authority to engage in interstate transportation of commerce. In support of this argument, Williams cites to *McLaughlin v. Brennan,* 700 F.Supp. 272 (W.D.Pa.1988), and argues that Alex's must show that it complied with the following Interstate Commerce Commission ("ICC") requirements: (1) proof of insurance; (2) designation of registered agent; (3) publishing and filing of tariffs; and (4) the execution of contracts. *Id.* at 273–74.

■ In *McLaughlin,* the court held that the defendant must prove compliance with the above ICC requirements because the ICC had not issued a permit to the defendant, an ICC permit is only issued after compliance with ICC requirements. *Id.* at 274 In this case however, Williams admits that the ICC did in fact issue a permit to Alex's. (Williams Resp. at 9.) Thus, Williams' reliance on *McLaughlin* is inapposite, and Alex's ICC permit is sufficient evidence of Alex's interstate authority.

With regard to whether Alex's advertised for interstate work, Williams admits that Alex's contracted with a number of major railroad companies to provide them with crew hauling services along the rail lines throughout the states of Illinois, Kansas, Texas, Arizona, New Mexico and their respective neighboring states. (Williams' Rule 12(N) Stmt.) Williams also admits that Alex's Illinois facility serves the following: all of Illinois; Hammond, Indiana; LaCrosse Wisconsin; and Ft. Madison, Iowa. As such, it is undisputed that Alex's advertised for, and received, interstate work.

With regard to whether Alex's assigned drivers indiscriminately to interstate work, Williams admits that he did not have an assigned interstate or intrastate route Williams only knew that he would be driving "trainmen over specified, regular and irregular routes to local or distant points...." (Williams Dep. at Ex. 1.) When a railroad company's dispatcher called Williams with a specific job, he knew it could mean he was traveling anywhere in Illinois, or to Hammond, Indiana, LaCrosse, Wisconsin, or Ft. Madison, Iowa.

■ Moreover, during Williams' three week employment with Alex's, he did in fact travel once out of the State of Illinois to LaCrosse, Wisconsin. Pursuant to the notice of interpretation, Williams' interstate run to LaCrosse, Wisconsin, alone is sufficient "proof that the driver is subject to [SofT authority] for a 4–month period from the date of the proof." 46 Fed.Reg. 37,903.

Consequently, the court finds that Williams could be, and actually was, called upon to drive interstate to transport railroad crew in the regular course of his employment. Thus, SofT jurisdiction did extend to Williams as a driver for Alex's. As such, Alex's can rely on the motor carrier exemption to defeat Williams' claim for overtime compensation.

## B. Rail Carrier Exemption

In addition to the motor canter exemption, Alex's relies on the rail carrier exemption to defeat Williams' claim for overtime compensation. Since the court has found that the motor carrier exemption is sufficient to sup-

port a summary judgment in favor of Alex's, the court will not fully analyze the applicability of the rail carrier exemption. However, the court is inclined to find that the rail carrier exemption would also apply to Alex's to defeat Williams' claim

Pursuant to 29 U.S.C. § 213(b)(2), employers do not have to pay overtime compensation to "any employee of an employer engaged in the operation of a rail carrier...." 29 U.S.C. § 213(b)(2). In *Cederblade v. Parmelee Transp. Co.,* 166 F.2d 554 (7th Cir. 1948), an independent contractor used motor vehicles to transport passengers and property between railroad depots or between railroad and boat depots in Chicago, Illinois. *See Cederblade v. Parmelee Transp. Co.,* 94 F.Supp. 965, 966 (N.D.Ill.1947), *aff'd,* 166 F.2d 554 (7th Cir.1948). The railroad carrier using the transportation service paid the independent contractor. *Id.* The Seventh Circuit in *Cederblade* opined that "such services are to be considered as transportation by the railroads, to which the transportation is incident.... [T]herefore, ... such transportation was railroad transportation and within the exemption of Section 213(b)(2) of the Fair Labor Standards Act." 166 F.2d at 556.

██ Williams argues that *Cederblade* should be limited to the "collection and delivery services" of passengers and baggage "within terminal areas." However, Williams does not cite, and the court has not found, any case that limits the rail carrier exemption in this manner.[1] Therefore, the court is inclined to accept the reasoning of *Cederblade* and find that Alex's "collection and delivery service" is incidental to a rail carrier such that Alex's is within the rail carrier exemption.

### III. CONCLUSION

The court finds that Alex's engaged in more than de minimis interstate commerce and that Alex's subjected Williams to a reasonable probability of being assigned to an interstate run. Thus, SofT had the authority to establish the qualifications and maximum hours of Williams' service. Consequently,

Alex's can rely on the motor carrier exemption to defeat Williams' claim for overtime compensation. Therefore, the court grants Alex's motion for summary judgment.

IT IS SO ORDERED.

---

[1] The Seventh Circuit has "made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir.1995).