Gary BARRON, Jennie Hord, and Kim Alderson, Plaintiffs,

v.

LEE ENTERPRISES, INC., Herald and Review, Mike Gulledge, and Terri Kuhle, Defendants.

No. 00–CV–2273.

United States District Court, C.D. Illinois, Urbana Division.

Jan. 28, 2002.

William C. Faber, Jr., Law Firm of William Faber, Ltd., Decatur, IL, for Plaintiff.

Charles C. Hughes, Daniel P. Fossier, Hughes, Hill & Tenney, Decatur, IL, for Defendant.

## *ORDER*

McCUSKEY, District Judge.

This case is before the court for ruling on various motions. Following this court's careful review of all the documents presented by the parties and the arguments of the parties, this court rules as follows: Defendants' Motion for Leave to File Affirmative Defenses (# 39) is GRANTED;

Defendants' Motion for Leave to File an Additional Affirmative Defense (# 47) is GRANTED; Plaintiffs' Motions to Strike (# 49, # 53, # 55) are DENIED; and Defendants' Motion for Summary Judgment as to Counts I and II(# 43) is GRANTED. Judgment will be entered in favor Defendants on Counts I and II of Plaintiffs' Complaint. Count I contained Plaintiffs' only federal claim, Plaintiffs' claim for overtime pay under the Fair Labor Standards Act (FLSA). Because judgment has been entered on Plaintiffs' only federal claim, this court declines to retain supplemental jurisdiction over Count V, Plaintiffs' only remaining claim, which is a state law claim for misrepresentation. Count V of Plaintiffs' Complaint will be dismissed without prejudice so that it may be refiled in state court. Because of this court's rulings, this court concludes that Plaintiffs' Motions Regarding Defendants' Experts (# 33) are MOOT.

## FACTS

Defendant Lee Enterprises, Inc. is a Delaware corporation doing business as the Decatur Herald & Review. The Decatur Herald & Review prints and delivers newspapers, on a daily basis, to subscribers in and around Macon County, Illinois. Defendant Mike Gulledge is the publisher of the Decatur Herald & Review and Defendant Terri Kuhle is the human resource/personnel manager at the Decatur Herald & Review.

Plaintiffs Garry Barron, Jennie Hord and Kim Alderson were employed by the Decatur Herald & Review as district managers in the circulation department. Barron was employed from August 1998 to May 1999 and was paid $425 per week, plus occasional bonuses. Hord was employed from April 1998 to March 2000. Hord started at $400 per week and was paid $480 per week at the time her employment terminated. Alderson was employed from November 1997 to March 2000. Alderson started at $400 per week and was paid $525 per week at the time her employment terminated. Hord and Alderson also received occasional bonuses.

Plaintiffs all testified at their depositions that their job duties as district manager included distributing bundled newspapers to carriers at about 2:00 a.m. each day, finding additional newspapers because there were not enough bundles to cover all the routes, cleaning the service center and parking lot, delivering newspapers on routes that did not have a carrier, recruiting carriers and finding substitutes, responding to customer complaints, and collecting from customers. Plaintiffs testified that much of the work they performed was manual labor. Plaintiffs testified that they were assigned a district but often had to do work in other districts when there was no manager for that district. They also were required to assist other district managers. Plaintiffs testified that they worked every weekend and on holidays. All three Plaintiffs testified that they did not do any sales work. Barron testified that he spent two to two and one-half hours per day delivering newspapers. Hord testified that she spent six to seven hours each day delivering newspapers, sometimes more. Alderson testified that she spent an average of six hours per day delivering newspapers. Barron testified that he viewed his job as a liaison between the Decatur Herald & Review and the independent carriers.

During the time Plaintiffs worked at the Decatur Herald & Review, the newspapers included preprinted and dated supplements, such as Sunday color comics, magazines such as Parade, coupons and other types of advertising supplements. Supplements were included with the newspapers on an average of six days per week.

These preprinted supplements were shipped to the Decatur Herald & Review by paying advertisers. These advertisers placed orders with the Decatur Herald & Review to have preprinted and dated supplements inserted in the newspapers and delivered to subscribers in and around Macon County. Preprinted supplements were shipped directly from out-of-state printers in Michigan, Kansas, Wisconsin and Indiana. The preprinted supplements were dated by the individual out-of-state advertisers to coincide with preplanned sales or special promotions by the respective advertiser. The preprinted supplements were inserted into newspapers on a date specified by the individual advertiser and delivered to subscribers by carriers. The preprinted supplements were stored on skids at the Decatur Herald & Review for two to ten days. Plaintiffs delivered newspapers which contained preprinted and dated supplements which were shipped from outside of Illinois.

On October 4, 2000, Plaintiffs filed a five-count Complaint (# 1) against Defendants. In the supporting documentation attached to the Complaint, Barron claimed that he worked 75 hours most of the weeks he worked for the Decatur Herald & Review. Hord claimed that she worked 87 hours every week she was employed at the Decatur Herald & Review. Alderson claimed that she worked 102 hours, or more, the majority of the weeks she was employed at the Decatur Herald & Review. In Count I, Plaintiffs alleged that they were entitled to overtime pay pursuant to the FLSA. In Count II, Plaintiffs alleged that Defendants were liable for violations of the Illinois Minimum Wage Law (820 Ill. Comp. Stat. 105/1 et seq.).

In Count V, Plaintiffs alleged that they were entitled to damages for misrepresentation of employment conditions and pay.[1] In their Answer to Count I(# 10), Defendants stated that "Plaintiffs were exempt as defined by the Fair Labor Standards Act."

## ANALYSIS

### I. DEFENDANTS' MOTIONS FOR LEAVE TO FILE

■ On October 22, 2001, Defendants filed a Motion for Leave to File Affirmative Defenses (# 39) and a Memorandum of Law (# 40) in support. Defendants sought to add three affirmative defenses: (1) that Plaintiffs were exempt from the requirements of the FLSA as bona fide administrative employees; (2) that Plaintiffs were exempt from the requirements of the FLSA for the time they spent delivering newspapers and on outside sales; and (3) that Plaintiffs were exempt from the overtime requirements of the FLSA under § 13(b)(1) of the FLSA, the Motor Carrier Act, because they delivered newspapers containing supplements and other materials printed outside of Illinois to their final intended destination within Illinois. Defendants noted that the Answer they filed clearly stated that Plaintiffs were employees who were exempt from the overtime provisions of the FLSA. Defendants argued that the key issue in the case is "clearly whether Plaintiffs were exempt from coverage under the FLSA." Defendants also noted that the issue of the Motor Carrier Act was raised during the depositions of Plaintiffs' expert witnesses and in the supplemental disclosures of Defendants' expert witnesses. Defendants therefore argued that allowing them to file

---

1. Plaintiffs' Complaint also included Count III, reformation of employment contracts, and Count IV, accounting. This court entered an Order (# 23) on June 4, 2001, which accepted the Magistrate Judge's Report and Recommendation (# 19), and dismissed Counts III and IV with prejudice.

their affirmative defense would serve the ends of justice by causing the pleadings to conform to the evidence and would not raise issues that would cause surprise to Plaintiffs or prejudice Plaintiffs' cause of action. Defendants specifically noted that Plaintiffs had "generally declined the opportunity to perform even basic discovery as evidenced by their strategy to forego depositions of the experts retained by [Defendants]."

On October 29, 2001, Plaintiffs filed a Memorandum of Law Opposing Defendants' Motion to File New Affirmative Defense–Motor Carrier Act (# 41). Plaintiffs stated that they opposed only the third proposed affirmative defense. Plaintiffs argued that the defense of the Motor Carrier Act exemption was late and a surprise. Plaintiffs argued that the proposed addition of the Motor Carrier Act exemption changed the theory of the defense, raised a panoply of new factual matters and effectively annulled the discovery work of the case. Plaintiffs also argued that Defendants had not provided any explanation for their delay. Plaintiffs did not request additional time for discovery or state what discovery would be necessary to respond to this defense.

This court notes that the Motor Carrier Act, 29 U.S.C. § 213(b)(1), is an exemption from the overtime requirements of the FLSA which is included in the FLSA. This court further notes that Defendants have claimed from the time they filed their Answer that Plaintiffs are exempt from the overtime provisions of the FLSA. This court therefore concludes that it would not cause undue surprise or be unduly prejudicial to Plaintiffs to allow Defendants to raise the issue of the exemption provided by the Motor Carrier Act. This court additionally notes that Plaintiffs' argument that allowing Defendants to raise this defense would annul the discovery work done in the case rings somewhat hollow when Plaintiffs conducted very little discovery in this case. Plaintiffs did not depose Defendants expert witnesses or, in fact, Defendants Gulledge or Kuhle. Plaintiffs have not suggested any discovery they would have done or would wish to do based upon the defense of the Motor Carrier Act. Accordingly, for the reasons stated, Defendants' Motion for Leave to File Affirmative Defenses (# 39) is GRANTED.

On November 15, 2001, Defendants filed a Motion for Leave to File Additional Affirmative Defense (# 47). Defendants sought to add a Fourth Affirmative Defense based upon the applicable statute of limitations for the FLSA set forth at 29 U.S.C. § 255(a). Plaintiffs filed a Response (# 52) on November 23, 2001. Plaintiffs stated that they were fully aware of the statute of limitations applicable to the FLSA. They stated that adding this affirmative defense did not surprise or prejudice them. Accordingly, Plaintiffs stated that they had no objection to Defendants' Motion. Therefore, Defendants' Motion for Leave to File Additional Affirmative Defense (# 47) is GRANTED.

## II. PLAINTIFFS' MOTIONS TO STRIKE

On November 19, 2001, Plaintiffs filed a Motion to Strike Defendants' Motion for Summary Judgment (# 49). Plaintiffs argued that Defendants' Motion did not comply with Rule 7.1(D) of the Local Rules of the Central District of Illinois. Defendants filed their Response (# 51) on November 23, 2001. Defendants noted that Rule 7.1(D) of the Local Rules was revised, effective December 1, 2000. Defendants argued that their Motion complied with the revised Local Rule. This court agrees with Defendants that their Motion for Summary Judgment, as filed, was in compliance with the revised Local Rule.

Accordingly, Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment (# 49) is DENIED.

■ On December 3, 2001, Plaintiffs filed a Motion to Strike Defendants' Supplemental Disclosures (# 53). Plaintiffs state that Defendants tendered supplemental disclosures on November 21, 2001. Plaintiffs contend that the supplemental disclosures include names of witnesses not previously disclosed. Plaintiffs complain that they will not have an opportunity to depose the newly named witnesses because the discovery deadline has passed. However, Plaintiffs' argument again rings hollow because Plaintiffs did not depose the witnesses named by Defendants during the discovery period. This court concludes that Plaintiffs have not shown that they have been prejudiced by Defendants' supplemental disclosures. Accordingly, Plaintiffs' Motion to Strike Supplemental Disclosures (# 53) is DENIED.

■ On December 7, 2001, Plaintiffs filed a Motion to Strike Affidavits Submitted by Defendants in Support of Defendants' Motion for Summary Judgment (# 55). Plaintiffs complained that the affidavits do not recite that the affiant is competent to testify to the matters contained in the affidavit. Plaintiffs also complained that the information contained in the affidavits was never before disclosed or made known to Plaintiffs.

■ Plaintiffs are correct that Rule 56(e) provides that affidavits filed in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *Markel v. Board of*

*Regents of Univ. of Wisc. Sys.,* 276 F.3d 906, 912 (7th Cir.2002). "Thus, statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet this requirement." *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir.1999), *cert. denied,* 528 U.S. 986, 120 S.Ct. 446, 145 L.Ed.2d 363 (1999).

This court has carefully reviewed the affidavits submitted by Defendants in support of their Motion for Summary Judgment. The court notes that each of the affidavits states the basis for the affiant's knowledge. The affidavits do not include statements which are based upon speculation or conjecture. This court concludes that, in conformity with Rule 56(e), the statements in the affidavits are based upon personal knowledge, set forth facts that would be admissible at trial, and show that the affiants are competent to testify as to the matters stated. This court additionally notes that Plaintiffs have not cited any authority for the proposition that the affidavits should be stricken because the information contained in the affidavits was never before disclosed or made known to Plaintiffs. This court notes that this was almost inevitable because Plaintiffs conducted little discovery in this case. Accordingly, for the reasons stated, Plaintiffs' Motion to Strike Affidavits Submitted by Defendants in Support of Defendants' Motion for Summary Judgment (# 55) is DENIED.

## III. DEFENDANTS' SUMMARY JUDGMENT MOTION

On November 1, 2001, Defendants filed a Motion for Summary Judgment as to Counts I and II(# 43).[2] Defendants also filed a Memorandum in Support (# 44) and

---

2. Defendants are not seeking summary judgment on Count V of Plaintiffs' Complaint. In Count V, Plaintiffs are seeking damages for misrepresentation based upon Illinois law.

supporting documentation. On December 7, 2001, Plaintiffs filed their Memorandum Opposing Defendants' Motion for Summary Judgment (# 56) and attached supporting documents. Defendants filed a Reply (# 58) on December 19, 2001.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations nor can it choose between competing possible inferences." *Williams v. Alex's Transp., Inc.,* 969 F.Supp. 1142, 1144 (N.D.Ill.1997), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter,

but instead to determine whether there is a genuine issue of triable fact." *Turk v. Buffets, Inc.,* 940 F.Supp. 1255, 1258 (N.D.Ill.1996), *quoting Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir.1994).

### B. COUNT I–OVERTIME WAGE CLAIM UNDER FLSA

#### 1. OVERVIEW

■ In Count I of their Complaint (# 1), Plaintiffs alleged that they are entitled to overtime pay based upon the FLSA. Defendants, in their Motion for Summary Judgment (# 43), argue that they are entitled to judgment on Plaintiffs' claims in Count I because Plaintiffs were exempt from the overtime requirement of the FLSA.[3] Under the FLSA, employers must pay their employees at least one and a half times their regular wages for the number of hours worked that exceed 40 in a given week. 29 U.S.C. § 207(a)(1); *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 533 (7th Cir.1999); *Mielke v. Laidlaw Transit, Inc.,* 102 F.Supp.2d 988, 990 (N.D.Ill.2000). However, as all employees know, the FLSA includes numerous exemptions from this requirement. *Mielke,* 102 F.Supp.2d at 990, *citing* 29 U.S.C. § 213(a)(1)-(17); 29 U.S.C. § 213(b)(1)-(30). Defendants contend that three exemptions apply in this case. First, Defendants claim that Plaintiffs are exempt based upon § 13(b)(1) of the FLSA, the Motor Carrier Act, because Plaintiffs performed exempt motor carrier work. 29 U.S.C. § 213(b)(1). Second, Defendants argue that Plaintiffs are exempt because they were employees "employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 13(a)(1); *Piscione,* 171 F.3d at

---

**3.** Defendants also claim that Plaintiffs are exempt from the minimum wage and record-keeping requirements of the FLSA. However, this court has carefully reviewed Count I of

Plaintiffs' Complaint and concludes that Plaintiffs have only brought an action under the FLSA for overtime pay.

533. Third, Defendants argue that Plaintiffs were exempt under § 13(d) of the FLSA because they were "engaged in the delivery of newspapers to the consumer." 29 U.S.C. § 213(d).

■ The FLSA is a remedial act and the exemptions from its requirements are to be narrowly construed against employers. *Klein v. Rush–Presbyterian St. Luke's Med. Ctr.*, 990 F.2d 279, 282 (7th Cir.1993). Defendants bear the burden of establishing that Plaintiffs fit within the claimed exemptions. *See Piscione*, 171 F.3d at 533; *Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 642 (7th Cir.1998).

Defendants have cited only one published opinion which is directly on point, *Webb v. Athens Newspapers, Inc.*, 999 F.Supp. 1464 (M.D.Ga.1998). Plaintiffs have not cited, and this court has not found, any contrary authority. This court finds the reasoning of the court in *Webb* very persuasive and applicable to this case. In *Webb*, the plaintiffs were employed as assistant district managers and district managers in the circulation department of a newspaper. The plaintiffs in *Webb* had job duties very similar to the job duties Plaintiffs have testified they had in this case. In *Webb*, the plaintiffs also delivered newspapers on open routes. The district court in *Webb* first concluded that genuine issues of material fact precluded a finding that the plaintiffs were employed in a bona fide administrative capacity and were exempt from the requirements of the FLSA under 29 U.S.C. § 213(a)(1). *Webb*, 999 F.Supp. at 1467–68. The court in *Webb* also recognized that § 13(d) of the FLSA exempted the work done by Plaintiffs in delivering newspapers and that this exemption could be "tacked" with exempt work under the administrative exemption. *See* 29 C.F.R. § 541.600. The court concluded, however, that "[b]ecause genuine factual issues exist

as to the administrative exemption, the section 13(d) exemption cannot be utilized until those issues are resolved." *Webb*, 999 F.Supp. at 1468. Finally, however, the court determined that the Motor Carrier Act applied because the plaintiffs were required to deliver newspapers almost every day and the newspapers contained supplements at least six and sometimes seven days a week, many of which were printed outside the state. *Webb*, 999 F.Supp. at 1468–72. Therefore, the court concluded that the plaintiffs were exempt from the overtime requirements of the FLSA. *Webb*, 999 F.Supp. at 1473. This court concludes that the same result is warranted in this case.

## 2. MOTOR CARRIER ACT EXEMPTION

■ As noted, Defendants argue that the overtime provisions of the FLSA are not applicable because Plaintiffs performed exempt motor carrier work. The Motor Carrier Act provides that employers do not have to pay overtime compensation to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). For the statutory exemption under § 13(b)(1) to apply, the Secretary of Transportation need not actually regulate the employee or his employer; "it applies whenever the Secretary has the *authority* to regulate a driver's hours and safety." *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 (9th Cir.1997); *see also Webb*, 999 F.Supp. at 1468 n. 4. The Department of Transportation (DOT) "retains its jurisdiction over the specified employees regardless of whether it has chosen to actually exercise its regulatory authority, and the overtime exemption applies to such employees despite the lack of DOT regula-

tion." *Turk,* 940 F.Supp. at 1259, *citing Levinson v. Spector Motor Serv.,* 330 U.S. 649, 661, 67 S.Ct. 931, 91 L.Ed. 1158 (1947); *Southland Gasoline Co. v. Bayley,* 319 U.S. 44, 47, 63 S.Ct. 917, 87 L.Ed. 1244 (1943).

 The Motor Carrier Act extends the power of the Secretary of Transportation to "motor carriers engaged in interstate commerce." *Webb,* 999 F.Supp. at 1468, *quoting* 49 U.S.C. § 302(a). An "employee is subject to the power of the Secretary of Transportation if the employee, in the performance of his or her duties, affects the safe operation of motor vehicles transporting goods in interstate commerce on public roadways." *Webb,* 999 F.Supp. at 1468. The jurisdiction of the Secretary of Transportation necessarily extends to transportation within a state that "is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled." *Klitzke,* 110 F.3d at 1469, *quoting Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 569, 63 S.Ct. 332, 87 L.Ed. 460 (1943). "The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations." *Turk,* 940 F.Supp. at 1261, *quoting Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 210 (1st Cir. 1972). Even a minor involvement in interstate commerce as a regular part of an employee's duties subjects the employee to the jurisdiction of the Secretary of Transportation. *Williams,* 969 F.Supp. at 1144.

The court in *Webb* noted that the nonjudicial enforcement and interpretation of the FLSA is done by the Department of Labor through the Administrator of the Wage and Hour Division. *Webb,* 999 F.Supp. at 1469, *citing* 29 U.S.C. § 204. The views of the Administrator on the applicability of the exemption under § 13(b)(1) have been expressed in interpretations from time to time. *Webb,* 999 F.Supp. at 1469. While these interpretations are not binding on the courts, they can provide guidance. *Webb,* 999 F.Supp. at 1469. The Wage and Hour Division's Field Operation Handbook contains interpretations of the Administrator as they relate to specific employment situations. *Webb,* 999 F.Supp. at 1469. Section 24d00(b) of the Handbook addresses the application of the § 13(b)(1) exemption as it relates to persons transporting and delivering newspapers. The Handbook states:

(a) The delivery of newspapers within the State in which they are printed is not transportation over which the DOT has jurisdiction. While such delivery drivers are engaged in the interstate communication or transmission of news so as to be covered by the FLSA, they are not transporting property (the newspaper) in interstate or foreign commerce within the meaning of the Motor Carrier Act.

(b) Certain newspapers of the type described in (a) above contain as an integral part weekly supplements, such as comics, magazines and the like, which are produced outside the State. If these supplements are obtained by the newspaper in complete and finished form and no processing work is performed on them by the newspaper establishment, the movement within the State of the supplements printed out of State constitutes part of a practical continuity of movement of the goods from the point of origin to the ultimate destination. Thus, the Sec 13(b)(1) exemption is applicable to the delivery drivers who transport and deliver the newspaper containing the supplements. The temporary storage of the supplements at the newspa-

per establishment awaiting insertion into the paper does not change the interstate character of the transportation.

Field Operations Handbook § 24d00.

In *Webb,* the evidence showed that the plaintiffs were required to drive newspapers to subscribers almost every day they worked for the newspaper. The evidence also showed that the newspapers contained supplements at least six and sometimes seven days a week, many of which were printed outside of the state. The court took judicial notice of the fact that "certain types of advertising supplements, including those involved in this case, are dated materials." *Webb,* 999 F.Supp. at 1472 n. 7. The court stated:

> Supplements such as the Sunday comics and Parade magazine, as well as others, are dated materials. As such, the advertisers only receive the intended benefit from them if they reach the consumers on the dates printed on the supplements.... Once the date on the supplement has passed, the supplement is worthless to the advertiser.

*Webb,* 999 F.Supp. at 1472. The court in *Webb* concluded that it was apparent that the plaintiffs were engaged in "interstate commerce" within the meaning of the § 13(b)(1) exemption "in the transportation of these supplements, whose final destination points were the homes of Athens Newspapers' customers." *Webb,* 999 F.Supp. at 1472. The court therefore concluded that the plaintiffs were exempt from the overtime wage requirements of the FLSA based upon the § 13(b)(1) exemption. *Webb,* 999 F.Supp. at 1472.

In this case, the evidence shows that, during their employment, Plaintiffs delivered newspapers on a daily basis, and for a substantial period of time each day. The evidence also shows that, during the time Plaintiffs worked at the Decatur Herald & Review, the newspapers included preprint-ed and dated supplements, such as Sunday color comics, magazines such as Parade, coupons and other types of advertising supplements. Supplements were included with the newspapers on an average of six days per week. These preprinted supplements were shipped to the Decatur Herald & Review by paying advertisers. These advertisers placed orders with the Decatur Herald & Review to have preprinted and dated supplements inserted in the newspapers and delivered to subscribers in and around Macon County. Preprinted supplements were shipped directly from out-of-state printers in Michigan, Kansas, Wisconsin and Indiana. The preprinted supplements were dated by the individual out-of-state advertisers to coincide with pre-planned sales or special promotions by the respective advertiser. The preprinted supplements were inserted into newspapers on a date specified by the individual advertiser and delivered to subscribers by carriers. The preprinted supplements were stored on skids at the Decatur Herald & Review for two to ten days.

Based upon these facts, this court concludes that the reasoning of the court in *Webb* applies, and Plaintiffs are exempt from the overtime wage requirements of the FLSA. Plaintiffs essentially concede this point, but argue that Defendants have advanced the Motor Carrier Act exemption too late, after discovery closed. Plaintiffs contend that the late assertion of this exemption is unfair to them. While this court is not unsympathetic to Plaintiffs' argument, this court again notes that Plaintiffs have not suggested any discovery they would have done or would wish to do based upon Defendants' assertion of the Motor Carrier Act exemption. In Defendants' Reply (# 58), Defendants note that Plaintiffs have never sought an extension to conduct discovery pursuant to Rule 56(f) (Fed.R.Civ.P. 56(f)). This court concludes

that Plaintiffs have not shown prejudice as they have not shown how discovery could undermine the application of the Motor Carrier Act exemption in this case. This court fails to see how Plaintiffs could challenge the fact that the newspapers they delivered contained dated supplements which were printed out of state. This court also notes that Plaintiffs could not challenge their own testimony that they delivered these newspapers on a daily basis, and for a substantial period of time each day.

Therefore, for the reasons stated, and based upon *Webb*, this court concludes that Defendants are entitled to summary judgment on Plaintiffs' claim for overtime pay under the FLSA. Accordingly, Defendants are entitled to summary judgment on Count I of Plaintiffs' Complaint. Because of this conclusion, this court does not need to consider Defendants additional arguments that Plaintiffs are exempt based upon the administrative and newspaper delivery exemptions.[4]

### C. COUNT II–MINIMUM WAGE LAW CLAIM

In Count II of their Complaint, Plaintiff alleged that, as a result of the many hours worked each week by Plaintiffs, Defendants failed to pay them the minimum wage as required by the Illinois Minimum Wage Law. *See* 820 Ill. Comp. Stat. 105/4(a) (West 2000). In their Motion for Summary Judgment, Defendants argue that, if summary judgment is granted as to Count I, summary judgment should also be granted as to Count II. Plaintiffs have not responded to this argument. This court agrees with Defendants. The Illinois Minimum Wage Law excludes from its definition of "employee" those individu-

als for whom the Secretary of Transportation has jurisdiction under the Motor Carrier Act. *Turk*, 940 F.Supp. at 1262, *citing* 820 Ill. Comp. Stat. 105/3(d)(7) (West 2000). Accordingly, this court concludes that Defendants are entitled to summary judgment on Count II of Plaintiffs' Complaint.

### IV. SUPPLEMENTAL JURISDICTION

 This court notes that the only claim remaining in this case is Count V, a state law claim of misrepresentation. 28 U.S.C. § 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) *the district court has dismissed all claims over which it has original jurisdiction,* or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added). "The plain wording of the statute makes

---

4. This court notes that, if this issue was considered, this court would conclude, as did the court in *Webb*, that genuine issues of material fact exist regarding whether these exemptions apply to Plaintiffs.

clear that a district court has discretion to retain or to refuse jurisdiction over state law claims." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500–01 (7th Cir.1999). A district court, in considering the factors set forth in § 1367(c) "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Groce*, 193 F.3d at 501, *quoting City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

In this case, Plaintiffs' Complaint alleged a cause of action based upon the FLSA, which gave this court original jurisdiction over the case. This court therefore had supplemental jurisdiction over Plaintiffs' state law claims. However, judgment has now been entered in favor of Defendants on Plaintiffs' only federal claim.

 " '[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.' " *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.), *cert. denied*, 525 U.S. 870, 119 S.Ct. 167, 142 L.Ed.2d 136 (1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994)). Cases involving difficult and unresolved issues of state law may well be adjudicated more accurately and more expeditiously in a state court. *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir.1998). In addition, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, are paramount concerns. *Kennedy*, 140 F.3d at 728. Based upon these considerations, this court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim. *See* 28 U.S.C. § 1367(c)(3); *Kennedy*, 140 F.3d at 727–28.

## V. PLAINTIFFS' MOTIONS REGARDING DEFENDANTS' EXPERTS

On October 22, 2001, Plaintiffs filed their Motions Regarding Defendants' Experts (# 33). Plaintiffs first argued that the experts disclosed by Defendants, John P. Murray and Philip K. Hanna, were not qualified to render expert opinions in this case. Plaintiffs also argued that the supplemental opinions provided by Murray and Hanna were not timely as they were disclosed after the deadline for disclosing experts. Plaintiffs next argued that Hanna's testimony should not be allowed because it was identical to the testimony of Murray and was therefore cumulative. Finally, Plaintiffs argued that the experts' opinions regarding the credibility of Plaintiffs should be barred.

Defendants did not rely on their experts' reports in support of their Motion for Summary Judgment.[5] Accordingly, this court did not need to consider the issue of the admissibility of the experts' opinions prior to ruling on the Motion for Summary Judgment. At this point, judgment has been entered in favor of Defendants on Count I and Count II of the Complaint and Count V will be dismissed by this court. Therefore, this court concludes that Plaintiffs' Motions Regarding Defendants' Experts (# 33) are MOOT.

IT IS THEREFORE ORDERED THAT:

---

**5.** Plaintiffs' did not depose either expert, so deposition testimony of the experts was not available.

(1) Defendants' Motion for Leave to File Affirmative Defenses (# 39) is GRANTED.

(2) Defendants' Motion for Leave to File an Additional Affirmative Defense (# 47) is GRANTED.

(3) Plaintiffs' Motions to Strike (# 49, # 53, # 55) are DENIED.

(4) Defendants' Motion for Summary Judgment as to Counts I and II(# 43) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiffs on Counts I and II of Plaintiffs' Complaint. Count V remains pending. However, because judgment has been entered on Plaintiffs' only federal claim, this court declines to exercise supplemental jurisdiction over the remaining state law claim. Plaintiffs' remaining claim, Count V, is dismissed without prejudice. Plaintiffs may refile this claim in state court pursuant to § 13–217 of the Illinois Code of Civil Procedure (735 Ill. Comp. Stat. 5/13–217 (West 2000)).

(5) Plaintiffs' Motions Regarding Defendants' Experts (# 33) are MOOT.

(6) This case is terminated. The final pretrial conference scheduled for February 8, 2002, and the jury trial scheduled for March 4, 2002, are hereby VACATED. The parties shall be responsible for their own court costs.