Charlemagne LOUIS–CHARLES, and on behalf of others similarly situated, Plaintiff,

v.

SUN–SENTINEL COMPANY, a foreign corporation, Defendant.

Case No. 07–80621–CIV.

United States District Court, S.D. Florida.

Oct. 1, 2008.

Stephen Joseph Padula, Padula Law Firm LLC, Boca Raton, FL, for Plaintiff.

James Jay Thornton, Hunton & Williams, Miami, FL, John W. Powers, Katherine L. Stephenson, Noah A. Finkel, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court upon defendant's motion for summary judgment [**DE 36**] along with its statement of material facts [**DE 37**] and its memorandum of law [**DE 38**], all filed on May 30, 2008. Plaintiff responded [**DE 41**] on June 16, 2008. Defendant replied [**DE 46**] on June 30, 2008. This Court held a hearing on September 17, 2008. The motion is now ripe for adjudication.

### I. Introduction

Plaintiff filed this lawsuit under the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 *et seq.* Plaintiff worked as a District Coordinator for defendant. In his complaint, plaintiff alleges that his primary job duty was to receive, count and compile the various newspapers at the distribution center and ensure that the newspapers were delivered. He was also responsible for completing paperwork for the newspaper carriers. He alleges that defendant failed to properly pay him overtime wages in accordance with the FLSA.

■ Defendant argues that plaintiff's job duties required him to spend a substantial amount of work time delivering newspapers to consumers. As such, defendant argues that the newspaper carrier exemption applies and that plaintiff is not entitled to overtime wages.[1] At issue in this case is whether a District Coordinator, whose job duties included, among other things, delivery of newspapers to consumers, is exempt from the requirements of the Fair Labor Standards Act (FLSA) due to the newspaper carrier exemption in 29 U.S.C. § 213(d).

### II. Standard of Review

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must construe all

---

1. In its amended answer, defendant raised both the newspaper carrier exemption and the administrative employee exemption as affirmative defenses. Since defendant only raised the newspaper carrier exemption in this motion for summary judgment, only that issue is before this Court for consideration.

facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir.2001). The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). "It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Lawrence v. Wal–Mart Stores, Inc.*, 236 F.Supp.2d 1314, 1322 (M.D.Fla. 2002) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). Moreover, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III.  Analysis

*Newspaper Carrier Exemption*

■■■ Congress enacted the FLSA to give "specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair days' work' and would be protected from 'the evil of "overwork" as well as "underpay." ' " *Barrentine v. Arkansas–Best Freight Sys. Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)(emphasis in original omitted). Generally, under the FLSA, an hourly paid employee is entitled to at least one and one-half times their regular pay rate for every hour worked exceeding forty hours per week. 29 U.S.C. § 207. Congress enacted a number of exemptions, one of which provides that an employee "engaged in the delivery of newspapers to the consumer" is not entitled to overtime pay pursuant to the FLSA. 29 U.S.C. § 213(d). Defendant, as the employer, has the burden to show that plaintiff is an exempt employee. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). Since the FLSA is a remedial statute, courts must construe exemptions narrowly against the employer. *Id.* Thus, defendant must prove two elements, that plaintiff (1) engaged in newspaper delivery (2) to consumers.

*Delivery*

First, this Court must determine whether plaintiff engaged in newspaper delivery. The exemption applies to any person "engaged in making [newspaper] deliveries" to consumers or engaged in the "delivery of newspapers to the consumer." 29 C.F.R. § 570.124.

*Meaning of Engaged in*

Section 213(d) does not define the term "engaged in" and there is very little case law in any Circuit discussing this exemption. In fact, *Webb v. Athens Newspapers, Inc.*, 999 F.Supp. 1464 (M.D.Ga.1998) [2] is

---

**2.** The facts in this case are analogous to *Webb*. Like Louis–Charles, the plaintiffs in *Webb* were management employees whose job duties included overseeing multiple newspaper routes. *Id.*, at 1466.  If a carrier position was vacant, the *Webb* plaintiffs were required to cover the route until a replacement was hired. *Id.* These plaintiffs had additional responsibilities not directly related to delivering the newspaper such as recommending individuals for employment and termination, cus-

the only case in the Eleventh Circuit to address the newspaper carrier exemption. That court, however, decided the case on alternative grounds.

Since there are no cases interpreting the "engaged in" language of the newspaper carrier exemption, this Court must consider its ordinary meaning. Black's Law Dictionary defines "engage" as "to employ or involve oneself to take part in; to embark on." Black's Law Dictionary 549 (7th ed. 1999). Merriam–Webster online defines "engage" as "to begin and carry on an enterprise or activity; to take part" and lists the word participate as a synonym. http://www.mirriam-webster.com/dictionary/engage. Based on these definitions, it appears that a minimal amount of participation is required to constitute "engaging in" an activity.

There are also two other sections of the FLSA where the term "engaged in" is used: (1) the description of which employees are eligible for minimum wage and overtime pay and (2) the Motor Carrier Act exemption

First, the FLSA explains that employees "engaged in commerce or in the production of goods for commerce" are eligible to receive minimum wages and overtime pay. 29 U.S.C. §§ 206(a), 207(a). If an employee's engagement in commerce or production of such goods is isolated or sporadic, then the FLSA does not apply. If, however, that employee's engagement is "regular and recurring" even though "small in amount" the FLSA does apply and an employer must abide by the wage and hour requirements. 29 C.F.R. § 776.3. In *Mabee v. White Plains Pub. Co.*, 327 U.S.

178, 66 S.Ct. 511, 90 L.Ed. 607 (1946), the Court held that respondent was engaged in interstate commerce even though only one-half on one percent of its papers were circulated in interstate commerce. The Court further held "[t]hough we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition, there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size." *Id.* at 181–82, 66 S.Ct. 511; *see also, Sun Pub. Co. v. Walling,* 140 F.2d 445, 448 (6th Cir.1944)(rejecting contention that the FLSA is not applicable to newspaper companies who only ship a small number of newspapers in interstate commerce). The Eighth Circuit held that the "amount or percentage of revenue derived by the employer from interstate [business] and upon the small number of interstate [transactions] handled" is not determinative on whether an employer engaged in interstate commerce. *Schmidt v. Peoples Telephone Union of Maryville, Mo.,* 138 F.2d 13, 15 (8th Cir. 1943). Accordingly the Tenth Circuit explained "engaged in commerce" as thus:

> The phrase 'engaged in commerce,' as used in the Fair Labor Standards Act to denote coverage, has come to have a well defined meaning under the adjudicated cases. It is now established beyond controversy that to be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services that he performs must be so closely related thereto as to be for all

---

tomer service, sales, and carrier scheduling. *Id.,* at 1466–67. They received a salary and were reimbursed for any mileage incurred while delivering newspapers. *Id.* at 1466. That Court held that issues of material fact prevented granting summary judgment on the

newspaper carrier exemption. In this case, however, no issues of material fact exist. For the reasons explained below, this Court holds that plaintiff was an exempt employee and therefore the provisions of the FLSA are not applicable.

practical purposes an essential part thereof. And in that connection closeness depends upon the essentiality and indispensability of the particular work or services performed to the actual movement of commerce.

*New Mexico Public Serv. Co. v. Engel,* 145 F.2d 636, 638 (10th Cir.1944). Finally, the Third Circuit held that it is the "character rather than the size of an activity [that] is the controlling feature" of whether an employer engages in commerce. *Davis v. Goodman Lumber Co.,* 133 F.2d 52, 53 (4th Cir.1943).

Second, pursuant to the Motor Carrier Act exemption, an employee is exempt from the FLSA if the employer is covered by the Motor Carrier Act and if the employee engages "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of" the Act. 29 C.F.R. § 782.2(a); 29 U.S.C. § 213(b)(1); 49 U.S.C. 31502(b).

Cases interpreting this statute and the regulations promulgated pursuant to the statute do not require that an employee spend all of their work time performing exempt activities. The actual percentage of time required for the exemption varies. One court held that "sometimes" participating in exempted activity is sufficient. *Ford, et al. v. Gannett, Co. Inc.,* 2005 WL 3115846 (W.D.N.Y. November 18, 2005). Other courts held that daily participation in exempted activity or twice per week is sufficient. *Barron, et al. v. Lee Enterprises, Inc.,* 183 F.Supp.2d 1077, 1085–87 (C.D.Ill.2002); *Hutson v. Rent–A–Center, Inc.,* 209 F.Supp.2d 1353 (M.D.Ga.2001). Thus, it appears that the term "engaged in" is similarly applied in both the Motor Carrier Act exemption and when determining whether an employee conducts enough duties within interstate commerce to apply the provisions of the FLSA.

In contrast to the "engaged in" language of the above exemptions, other FLSA exemptions require that the exempted activity constitute an employee's "primary duty." [3] Like the "engaged in" standard, courts have varied results when deciding the amount of *time* an employee must spend performing the exempted activity to constitute his or her "primary duty." The regulations describe what constitutes an employee's primary duty:

> Time alone ... is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work ... Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.

29 C.F.R. § 541.700(b), (c). As such, the main criteria in assessing an employee's primary duty is not the time spent completing certain tasks, but rather "the principal, main, major or most important duty that the employee performs" and must be determined on a case by case basis with the weight of the consideration focusing on the "character of the employee's job as a whole." 29 C.F.R. § 541.100(A); 29 C.F.R. § 541.700(a).

Plaintiff argues that since his "primary duty" was managerial as opposed to news-

---

**3.** Examples include exemptions for executives, administrators, computer employees and independent contractors. *See,* 29 U.S.C. §§ 13(a)(1), 13(b)(10)(a), (17); 29 C.F.R. §§ 541.100(a)(2)-(4), 541.200(a)(1)-(a)(3), 541.500, 541.700.

paper delivery, the exemption should not apply. The plan language of the statute, however, never uses the words "primary duty." While other exemptions do contain the phrase "primary duty," this statute uses the word "engaged."

■■■ When statutory language is clear, courts must abide by that language and give the statute its plainly worded meaning. *Consumer Product Safety Comm'n v. GTE Sylvania Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)("In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' "). Courts must also "give meaning to every word and clause in a statute." *Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment CSX Transportation Northern Lines v. CSX Transportation, Inc.*, 522 F.3d 1190, 1195 (11th Cir.2008). If this Court were to ignore the "engaged in" language and supplant it with the "primary duty" language, it would be flouting these long established rules of statutory interpretation.[4]

Taking the rules of statutory construction, the ordinary meaning of "engaged in," and considering the way courts have interpreted the term in other parts of the FLSA, an employee "engaged in" an activity must be something less than if that activity was his "primary duty." In fact, it appears that so long as the employee has consistent time spent performing the exempt duty, he is exempt from the provisions of the FLSA. The actual amount or percentage of time spent performing the exempt duty is less determinative.

Based on the above, this Court must now determine if plaintiff's work activities delivering newspapers were sufficient to apply the exemption. After considering all of the evidence, this Court finds dispositive the information contained in plaintiff's job description, his mileage report, the deposition of plaintiff's supervisor Denise Reid and plaintiff's own testimony about his daily work responsibilities.

Defendant issued plaintiff a job description, which included sections such as role, responsibilities, requirements, major purpose, major responsibilities, authority, requirements as well as impact of decisions and work relationships. Within each of these sections plaintiff was informed of the multiple duties he must perform as a District Coordinator in the Circulation Department. Such duties included:

- administrative tasks;
- supervision of lower level employees;
- recruitment and training;
- quality control;
- customer service; and
- ensuring employee and independent contractor compliance with contracts, policies and procedures;

Additionally, defendant listed a number of duties specifically addressing plaintiff's responsibilities regarding newspaper delivery:

- coordinate all early morning operations including newspaper distribution;
- deliver any route not currently assigned to a newspaper deliver;
- deliver replacement newspapers to customers;
- possess the physical ability to deliver newspapers; and
- possess a reliable automobile and a current Florida driver's license.

---

**4.** Even if the statute were not clear, plaintiff fails to explain why this Court should impose the "primary duty" language into the statute. As such, this Court declines to do so.

At the hearing, defense counsel testified that if plaintiff failed to perform his newspaper delivery duties, he could be terminated.

Moreover, plaintiff's supervisor, Denise Reid, testified that plaintiff typically would deliver newspapers two to five times per week and that it took an average of one and a half hours to deliver a route.[5] In an affidavit that plaintiff filed with his response to the instant motion, he swore that delivering newspapers occupied no more than "20–25% of my daily job duties." Plaintiff's mileage reports are also instructive about the regularity of plaintiff's newspaper delivery.

Although it does not appear that the Court was provided with a complete copy, plaintiff's mileage reports[6] indicate that plaintiff delivered newspapers five days in March, 2006, twenty days in April 2006, eighteen days in May 2006, twenty-six days in June 2006, twenty days in July 2006; eighteen days in August 2006, eleven days in September 2006, twenty days in October 2006, twenty days in November 2006, twenty days in December 2006, fourteen days in January 2007, thirteen days in February 2007, ten days in March 2007, eighteen days in April 2007, twenty-three days in May 2007, twenty days in June 2007 and thirteen days in July 2007. Therefore, based on plaintiff's mileage reports, it appears that in these months, plaintiff delivered newspapers an average of seventeen days per month. This roughly breaks down to having delivered newspapers just over four times per week.

Relying on the ordinary meaning of the word "engage" as well as the cases interpreting that phrase in other contexts, this Court holds that plaintiff was engaged in newspaper delivery, and therefore, he is exempt from the provisions of the FLSA. Plaintiff's newspaper delivery was "regular and recurring" even though the time he spent delivering newspapers each day may have been "small in amount[.]" Plaintiff's job description listed at least five items related to his duty to deliver newspapers all of which were mandatory duties for which he could be terminated for failure to complete. Moreover, plaintiff regularly delivered newspapers multiple times per week for at least one and one-have hours each time. As stated above, plaintiff stated in his affidavit that newspaper delivery "occupied no more than 20–25% of my daily job duties." His mileage reports also indicate that he actually delivered newspapers an average of just over four times per week.

*Incidental Activities*

■ In addition to the above, defendant appears to argue that this Court should also consider any time plaintiff spent doing activities incidental to newspaper delivery such as receiving, counting and compiling newspapers as well as verifying and stocking newspaper inserts. Defendant relies on the language "delivery of newspapers" found in the statute, as opposed to the language "making newspaper deliveries" found in the regulations, to support its argument. This interpretation of the statute is overbroad. This Court has not found any authority to justify expanding the newspaper carrier exemption to include time spent performing duties beyond actual delivery of newspapers to consumers. For example, the act does not exempt employees engaged in moving news-

---

**5.** Although plaintiff testified that he delivered newspapers four or more times per week, averaging fifteen to twenty-one hours of newspaper delivery per week, this Court must consider the evidence in the light most favorable to plaintiff. As such, this Court will rely on Reid's testimony as opposed to plaintiff's in this instance.

**6.** Defendant required plaintiff to submit a mileage report each day he delivered newspapers.

papers to middlemen or to a destination other than a final consumer. 29 C.F.R. § 570.124. Accordingly, it would appear that the statute is limited to employees who actually deliver newspapers to consumers and that to include time spent performing auxiliary duties is outside the scope of the exemption.

Now that this Court has determined that plaintiff was engaged in newspaper delivery, the next issue is whether plaintiff delivered newspapers to consumers.

*Delivery to Consumers*

Any person who delivers newspapers directly to a subscriber's address or sells the newspaper directly to consumers on the street is exempt from overtime pay. 29 C.F.R. § 570.124. In regards to whether plaintiff delivered newspapers to customers, plaintiff argues that distribution center employees typically deliver newspapers to middlemen rather than consumers, but fails to cite any evidence to support his argument. Defendant argues that the record reflects that plaintiff delivered newspapers to consumers. Defendant cites plaintiff's own testimony to support its argument. This Court has conducted an independent review of the record. Although there were some instances where plaintiff delivered newspapers to middlemen, such as the Boca East Distribution Center, Boca Raton Community Hospital, Boca Raton Polo Club and South Ocean Boulevard, these constituted relatively isolated incidents. The vast majority of time, plaintiff delivered newspapers to consumers. As such, this Court holds that plaintiff delivered newspapers to consumers.

*Nexus with Child Labor Laws*

█ Plaintiff argues that this Court should find significant the fact that the newspaper delivery exemption is within the child labor regulation section of the Code. Plaintiff urges this Court to infer that § 213(d)'s purpose is to cover only minors who have a paper route seeking to earn extra money; paper boys as he phrases it. Precedent and regulations specifically instruct against this interpretation.

First, the Code includes an entire section devoted to comparing the child labor regulations with the wage and hour provisions. 29 C.F.R. § 570.103. Relevant here, the regulation states: "[t]here are only four specific child labor exemptions of which only one applies to the minimum wage and overtime pay requirements as well. This is the exemption for employees engaged in the delivery of newspapers to the consumer." Thus, it appears that the newspaper carrier exemption, while included in the child labor regulations, and having applicability to child labor, is not intended to exclusively apply to minors.

Second, the limited precedent discussing this exemption pertains to adults working in the newspaper industry and plaintiff did not cite, nor could this Court find, a single example of a minor seeking overtime payment under the FLSA. *Barron v. Lee Enterprises, Inc.,* 183 F.Supp.2d 1077 (C.D.Ill.2002)(discussing the newspaper carrier exemption but granting summary judgment under the Motor Carrier Act exemption); *Webb v. Athens Newspapers, Inc.,* 999 F.Supp. 1464 (M.D.Ga. 1998)(same). Thus, this Court simply cannot adopt plaintiff's view of the statute.

Based on the above, it is hereby,

ORDERED AND ADJUDGED that defendant's motion for summary judgment **[DE 36]** is GRANTED. Final judgment shall be issued by separate order.